# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SEGWAY INC., a Delaware                )
corporation,                           )
                                       )
      Plaintiff,                   )
                                       )
    v.                               )    C.A. No. 2022-1110-LWW
                                       )
HONG CAI, a/k/a/ JUDY CAI, an          )
individual,                            )
                                       )
      Defendant.                   )

## MEMORANDUM OPINION

Date Submitted: September 25, 2023
Date Decided: December 14, 2023

Francis G.X. Pileggi & Sean M. Brennecke, LEWIS BRISBOIS BISGAARD & SMITH LLP, Wilmington, Delaware; *Counsel for Plaintiff Segway Inc.*

T. Brad Davey & Mathew A. Golden, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Barry Pollack, POLLACK SOLOMON DUFFY LLP, Boston, Massachusetts; *Counsel for Defendant Judy Cai*

**WILL, Vice Chancellor**

Segway Inc. brings this breach of fiduciary duty action against its former President, Judy Cai. Cai was an officer at a time when Segway experienced declining sales of its personal transportation devices and an increase in accounts receivable. According to Segway, Cai was aware of but concealed and failed to address these issues. The magnitude of the problems allegedly remained undiscovered until after Segway was acquired.

One would be forgiven for assuming that Segway's allegations underlie a claim for breach of the duty of care. Yet Segway has disavowed any such claim. It insists that it is pursuing a different theory against Cai for breaching her duty of oversight.

Segway appears to believe that the high bar to plead a *Caremark* claim is lowered when the claim is brought against an officer. This is a distressing reading of our law. As conceived by Chancellor Allen in *Caremark*, directors have a duty to implement systems to detect and address wrongdoing at lower levels of the company. Liability can only attach in the rare case where fiduciaries knowingly disregard this oversight obligation and trauma ensues. Despite a proliferation of modern jurisprudence, bad faith remains a necessary predicate to any *Caremark* claim. Segway's attempt to hold a corporate officer accountable for unexceptional financial struggles flouts these enduring principles.

Cai's motion to dismiss is granted.

1

## I. FACTUAL BACKGROUND

The following facts are drawn from the Verified Amended Complaint (the "Complaint") and the documents it incorporates by reference.[1]

### A. Segway's Acquisition

Plaintiff Segway Inc. is a designer and manufacturer of personal transportation devices.[2] As a standalone company, Segway remained relatively small despite its early success. In 2015, for example, it had approximately $35 million of annual revenue and employed about 80 people nationwide.[3]

In April 2015, Segway was acquired by a subsidiary of Ninebot (Beijing) Tech Co., Ltd., which also produces short-distance robotic transportation devices.[4] Segway began distributing Ninebot products alongside its own.[5] Segway otherwise continued to operate as it had pre-acquisition. Segway maintained its own board of directors, officers, employees, and financial and accounting systems separate from Ninebot.[6]

---

[1] Verified Am. Compl. for Breach of Fiduciary Duty (Dkt. 10) ("Am. Compl."); *see In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (citing *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170 (Del. 2006)).

[2] Am. Compl. ¶ 6.

[3] *Id.* ¶ 8.

[4] *Id.* ¶¶ 3, 11.

[5] *Id.* ¶ 12.

[6] *Id.* ¶ 13.

## B. Cai's Role at Segway

Defendant Judy Cai is a former Segway employee.[7] She was hired in 2015 as Segway's Vice President of Finance.[8] In that role, she oversaw "the daily operations of the finance department and provid[ed] leadership and coordination in [Segway's] administrative, business planning, accounting, and budgeting efforts."[9]

In December 2015, Cai was appointed Segway's interim President and was reappointed to that position in February 2017.[10] She became Segway's President in 2018.[11] Cai continued to function as Segway's in-house accountant "with complete responsibility for [Segway's] tax matters."[12] She remained "involved in compiling and/or reviewing" financial information for "Ninebot's management."[13]

## C. Segway's Downturn

After the Ninebot acquisition, Segway experienced declining sales and a shrinking customer base.[14] Segway turned away from its branded personal

---

[7] *Id.* ¶ 9.

[8] *Id.*

[9] *Id.*

[10] *Id.* ¶¶ 10, 14.

[11] *Id.* ¶ 14.

[12] *Id.* ¶ 15.

[13] *Id.* ¶ 18.

[14] *Id.* ¶ 21. Segway's annual revenue from its personal transportation device line fell to $3.5 million in 2020. *Id.*

transportation devices and focused on selling Ninebot products instead.[15]  Segway also began downsizing its operations.  By 2018, it had just 60 employees with a finance department of "5 or 6 people, including Cai."[16]

In 2020, Segway closed its Bedford, New Jersey headquarters and laid off most of its employees.[17]  Cai stayed with the company.[18]  The remaining employees were "tasked with transitioning [Segway's] operations" and ensuring the orderly closing of the [Bedford] facility."[19]  Cai's employment was terminated in November 2020, following the Bedford facility's closure.[20]

## D.    The Financial Discrepancies

Segway continued to integrate its financial information into Ninebot's systems after Cai's termination.[21]  During this process, "it became apparent that the information Cai provided Ninebot did not match the actual numbers in Segway's financial records."[22]  One "egregious discrepanc[y]" related to an excess of $5

---

[15] *Id.*

[16] *Id.* ¶ 20.

[17] *Id.* ¶ 28.

[18] *Id.*

[19] *Id.*

[20] *Id.* ¶ 29.

[21] *Id.* ¶ 30.

[22] *Id.* ¶ 31.

million in accounts receivable that were "not properly recorded and/or booked."[23] Ninebot's management was unable to "reconcile the discrepancies" despite "considerable time and resources [spent] attempting to" do so.[24] Cai declined Ninebot's request for assistance.[25]

### E. This Litigation

Segway commenced this action on December 2, 2022.[26] Its initial complaint advanced a single claim against Cai for breach of fiduciary duty.[27] After Cai filed a motion to dismiss, Segway filed its amended Complaint on February 24, 2023.[28] Segway continued to press a breach of fiduciary duty claim against Cai and requested money damages and an accounting for uncollected accounts receivable.[29] Cai once again moved to dismiss.[30] After briefing was complete, the motion to dismiss was argued on September 25, 2023.[31]

---

[23] *Id.* ¶ 32.

[24] *Id.* ¶ 33.

[25] *Id.* ¶ 34.

[26] Dkt. 1.

[27] *Id.*

[28] Dkts. 8, 10.

[29] Am. Compl. ¶¶ 35-40, Prayer for Relief.

[30] Dkts. 11-12; *see also* Dkts. 14, 15.

[31] Dkt. 18; *see* Tr. of Sept. 25, 2023 Hr'g on Def.'s Mot. to Dismiss (Dkt. 19) ("Hr'g Tr.").

## II.  LEGAL ANALYSIS

Segway seeks dismissal of the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The standard that governs her motion is as follows:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[32]

Although I "must draw reasonable inferences in favor" of Segway, I am "not required to accept every strained interpretation of [its] allegations."[33]

### A.  Segway's *Caremark* Claim

The nature of Segway's claim is not obvious from its Complaint. Segway alleges that Cai "knew or should have known that there were potential issues" with "some of [Segway's] customers, which caused [Segway's] accounts receivable to continuously rise."[34]  It further avers that Cai breached her fiduciary duties as an officer of Segway by "continuously ignoring" these "issues (and the resulting impact

---

[32] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citation omitted).

[33] *Gen. Motors (Hughes)*, 897 A.2d at 168 (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[34] Am. Compl. ¶ 37.

on [Segway's] profitability), fail[ing] to take any action to address them . . . and/or fail[ing] to advise [Segway's] board."[35]

Based on these allegations, I assumed Segway was claiming that Cai breached her duty of care by neglecting to adequately compile, review, and report Segway's financial information.[36] But Segway is adamant that it only intends to advance a claim for breach of Cai's duty of loyalty—specifically, her oversight obligation.[37] I will proceed accordingly.

Oversight duties arise from the duty of good faith, which is a subsidiary element of the duty of loyalty.[38] To plead a viable claim for breach of the duty of oversight, a plaintiff must allege sufficient facts to support a reasonable inference that the fiduciary acted in bad faith.[39] Under *Caremark*, bad faith can be established

---

[35] *Id.* ¶ 38.

[36] *See, e.g.*, *id.* ¶¶ 17-18. Even if Segway were raising a duty of care claim, it would fall short of pleading gross negligence. *See Buckley Fam. Tr. v. McCleary, Inc.*, 2020 WL 1522549, at *10 (Del. Ch. Mar. 31, 2020) (discussing the high standard applicable to the duty of care and defining gross negligence as "conduct that constitutes reckless indifference or actions that are without the bounds of reason") (citation omitted).

[37] Hr'g Tr. 28 (describing Segway's claim as brought under *Caremark* "[p]rong two, just in ignoring red flags and not advising the people who she needed to advise. That's it."); *id.* ("We are not asserting a breach of care claim."); *see also* Pl.'s Answering Br. in Opp'n to Mot. to Dismiss Am. Compl. (Dkt. 14) ("Pl.'s Answering Br.") 8 (asserting that Cai argued under the "wrong" standard in moving to dismiss because she addressed gross negligence while Segway was alleging bad faith).

[38] *See Marchand v. Barnhill*, 212 A.3d 805, 820-21 (Del. 2019).

[39] *See Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) ("Where directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their

when fiduciaries (1) "utterly fail to implement any reporting or information system or controls," or (2) "having implemented such a system or controls, consciously fail to monitor or oversee its operations," which disables them "from being informed of risks or problems requiring their attention."[40]

Segway argues that it has stated such a claim against Cai based on its reading of the recent *McDonald's* decision.[41] In *McDonald's*, Vice Chancellor Laster observed that officers of Delaware corporations owe context-specific "duties of oversight comparable to those of directors."[42] He emphasized that—barring extreme facts—an officer's duty of oversight would only extend to matters within the officer's remit.[43] But he did not (as Segway seems to intuit) craft a lower standard for oversight claims brought against officers.[44]

---

responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith.") (citation omitted).

[40] *Id.* (cleaned up).

[41] *See* Pl.'s Answering Br. 6-8, 10, 13-18; *id.* at 13 (arguing that its allegations describe conduct that "mirrors" *McDonald's*).

[42] *In re McDonald's Corp. S'holder Deriv. Litig.*, 289 A.3d 343, 370 (Del. Ch. 2023); *see also Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009) (explaining that "officers of Delaware corporations, like directors, owe fiduciary duties of care and loyalty").

[43] *McDonald's*, 289 A.3d at 370.

[44] *Id.* ("Officers only will be liable for violations of the duty of oversight if a plaintiff can prove that they acted in bad faith.").

## B. Whether Segway States a Claim

As President of Segway, Cai owed fiduciary duties to the company and its stockholders.[45] Segway contends that Cai breached those duties by "conscious[ly] disregard[ing]" certain financial discrepancies, giving rise to a claim under the second prong of *Caremark*.[46] To state such a claim, Segway must adequately plead that Cai "consciously failed to act after learning about evidence of illegality—the proverbial 'red flag.'"[47] Applying the *McDonald's* framework invoked by Segway, the alleged oversight violation would need to fall within Cai's sphere of corporate responsibility.[48]

Cai was allegedly charged with overseeing Segway's "financial performance, including its accounts receivable."[49] She managed "the daily operations of the finance department," handled Segway's "tax matters," and was "involved in

---

[45] *See Hampshire Gp., Ltd. v. Kuttner*, 2010 WL 2739995, at *1 (Del. Ch. July 12, 2010) ("As a general matter, our Supreme Court has found that the duties of corporate officers are similar to those of corporate directors.") (citing *Gantler*, 965 A.2d at 709).

[46] Am. Compl. ¶¶ 38-39; *see* Hr'g Tr. 28 (Segway's counsel arguing that Cai "ignor[ed] red flags and [did] not advis[e] the people who she needed to advise"); *see also Stone*, 911 A.2d at 370 (outlining the two formulations of a *Caremark* claim); *Constr. Indus. Laborers Pension Fund ex rel. SolarWinds Corp. v. Bingle*, 2022 WL 4102492, at *6 (Del. Ch. Sept. 6, 2022) (explaining that the two types of oversight claims recognized in *Stone* are "colloquially referred to as prongs one and two of *Caremark*"), *aff'd*, 297 A.3d 1083 (Del. 2023) (TABLE).

[47] *South v. Baker*, 62 A.3d 1, 15 (Del. 2012).

[48] *See McDonald's*, 289 A.3d at 370.

[49] Am. Compl. ¶ 14.

compiling and/or reviewing" summaries of Segway's finances.[50]   According to Segway, Cai "was aware of serious issues" with customers that "led to significant increases" in accounts receivable and "willfully ignored" problems within her areas of responsibility.  Segway maintains that Cai should be held liable for failing to address these matters or advise the board of directors about them.[51]

These allegations are an ill fit for a *Caremark* claim.  No potential wrongdoing (much less within Cai's purview) is alleged.  Segway does not, for example, state that Cai overlooked accounting improprieties,[52] fraudulent business practices,[53] or other material legal violations.  It merely asserts that Cai learned (at some point) about "issues" with unspecified customers, revenue decreases for a product line, and increases in receivables.[54]  Such generic financial matters are far from the sort of red flags that could give rise to *Caremark* liability if deliberately ignored.[55]

---

[50] *Id.* ¶¶ 9, 18.  Oddly, the Complaint discusses Cai's reporting of financial summaries to Ninebot management rather than to the Segway board of directors.  This presents another problem with Segway's legal theory.

[51] *See id.* ¶ 38.

[52] *See Ash v. McCall*, 2000 WL 1370341, at *4, *15 (Del. Ch. Sept. 15, 2000) (dismissing claims and observing that allegations about directors' personal knowledge of reported "potential accounting improprieties" might support demand futility).

[53] *See David B. Shaev Profit Sharing Acct. v. Armstrong*, 2006 WL 391931, at *2 (Del. Ch. Feb. 13, 2006) (dismissing *Caremark* claims concerning allegedly fraudulent business practices where the plaintiff failed to allege bad faith).

[54] Am. Compl. ¶ 22.

[55] *E.g.*, *City of Detroit Police and Ret. Sys. v. Hamrock*, 2022 WL 2387653, at *25 (Del. Ch. June 30, 2022) (concluding that the board's knowledge of "general risks" regarding non-compliance with safety regulations was not a "red flag" of a "specific corporate

The Complaint also lacks facts suggesting that Cai acted in bad faith. Segway—with 20/20 hindsight—wants Cai to answer for a decrease in sales and an increase in receivables. "Oversight duties under Delaware law are not," however, "designed to subject [fiduciaries] to personal liability for failure to predict the future and to properly evaluate business risk."[56] Bad things can happen to corporations despite fiduciaries exercising the utmost good faith.[57]

The *Caremark* doctrine is not a tool to hold fiduciaries liable for everyday business problems. Rather, it is intended to address the extraordinary case where fiduciaries' "utter failure" to implement an effective compliance system or "conscious disregard" of the law gives rise to a corporate trauma.[58] These tenets of

---

trauma" that could support a *Caremark* claim); *In re ProAssurance Corp. S'holder Deriv. Litig.*, 2023 WL 6426294, at *14 (Del. Ch. Oct. 2, 2023) (dismissing a *Caremark* claim where the alleged misconduct involved a "classic business decision" and no "red flags of illegality" had been pleaded); *cf. McDonald's*, 289 A.3d at 378 (holding that it was reasonably conceivable an officer faced *Caremark* liability where he allegedly ignored "massive red flags" within his remit including multiple rounds of "coordinated EEOC complaints," widespread strikes, and a "thirty-city walkout").

[56] *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 131 (Del. Ch. 2009) (emphasis omitted).

[57] *See Stone*, 911 A.2d at 373 (explaining that Delaware courts will not "equate a bad outcome with bad faith"); *In re Goldman Sachs Grp., Inc. S'holder Litig.*, 2011 WL 4826104, at *23 (Del. Ch. Oct. 12, 2011) ("Good faith, not a good result, is what is required . . . ."); *see also Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007) ("Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.").

[58] *Stone*, 911 A.2d at 370; *see Melbourne Mun. Firefighters' Pension Tr. Fund v. Jacobs*, 2016 WL 4076369, at *8 (Del. Ch. Aug. 1, 2016) (observing that a "complained-of 'corporate trauma' . . . must be sufficiently similar to the misconduct caused by the 'red

11

our law persist regardless of whether a *Caremark* claim is brought against a director or an officer. Officers' management of day-to-day matters does not make them guarantors of negative outcomes from imperfect business decisions.[59]

*      *      *

Segway's claim rests on the misimpression that an oversight claim pursued against an officer is easier to plead than one against a director. Irrespective of the defendant's corporate title, a *Caremark* claim is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."[60] At a minimum, a plaintiff pursuing an oversight claim against an officer would need to demonstrate that the officer failed to make a good faith effort to monitor central compliance risks within her remit that pose potential harm to the company or others. No such reasonably conceivable claim is stated here.

## III. CONCLUSION

For the foregoing reasons, Cai's motion to dismiss is granted. The Complaint is dismissed in its entirety under Rule 12(b)(6).

---

flags' such that the board's bad faith, 'conscious inaction' proximately caused that trauma" (quoting *South*, 62 A.3d at 15, 17)), *aff'd*, 158 A.3d 449 (Del. 2017).

[59] *See Citigroup*, 964 A.2d at 124 (explaining that Delaware courts faced with claims to hold fiduciaries liable for "business decisions that, in hindsight, turned out poorly" have "doctrines to deal with them—the fiduciary duty of care and the business judgment rule").

[60] *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).