OF THE
STATE OF DELAWARE

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Final Report:  December 8, 2023
Date Submitted:  November 17, 2023

Philip Trainer, Jr., Esquire
Randall J. Teti, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, Delaware  19801

Samuel T. Hirzel, II, Esquire
Brendan Patrick McDonnell, Esquire
Heyman Enerio Gattuso & Hirzel
LLP
300 Delaware Avenue, Suite 200
Wilmington, Delaware  19801

RE:     *Rwanda Social Security Board v. L.E.A.F. Pharmaceuticals, LLC, et al.*,
C.A. No. 2022-0987-BWD

Dear Counsel:

In this action, the plaintiff, Rwanda Social Security Board ("RSSB"), brings claims for fraud, negligent misrepresentation, equitable fraud, unjust enrichment, and breach of contract against defendants L.E.A.F. Pharmaceuticals LLC, L.E.A.F. Holdings Group LLC, and Clet Niyikiza (collectively, "Defendants") arising from a series of transactions through which RSSB acquired units of L.E.A.F. Pharmaceuticals LLC.  In response to RSSB's complaint, Defendants filed an answer and counterclaims, alleging that by filing this lawsuit, RSSB committed abuse of process and tortious interference with prospective contractual relations. RSSB has moved to dismiss Defendants' counterclaims for failure to state a claim. In this final report, I recommend that both counterclaims be dismissed.

## I.    BACKGROUND

The following facts are taken from Defendants' Answer With Affirmative Defenses and Counterclaims (the "Counterclaims") and the documents incorporated by reference therein, affording Defendants the benefit of all reasonable inferences.

### A.    The Complaint

RSSB is a Rwandan governmental entity that manages the Republic of Rwanda's pension, social security, health insurance, savings, disability, and maternity benefits.  Verified Compl. [hereinafter, "Compl."] ¶ 1, Dkt. 1; Defs.' Ans. With Affirmative Defenses and Countercls. [hereinafter, "Countercls."] ¶ 1, Dkt. 6.

On October 31, 2022, RSSB initiated this action through the filing of a Verified Complaint (the "Complaint").  The Complaint names as defendants L.E.A.F. Pharmaceuticals LLC ("LEAF"), L.E.A.F. Holdings Group LLC ("Holdings"), and Clet Niyikiza.  Compl. ¶¶ 1-4.  LEAF is a Delaware limited liability company that develops, manufactures, and commercializes drug therapies. *Id.* ¶ 2.  Holdings, also a Delaware limited liability company, is a founding member of LEAF.  *Id.* ¶ 3.  Clet Niyikiza is the founder, President, CEO, and Manager of LEAF.  *Id.* ¶ 4.  He is also the founder, owner, and Manager of Holdings.  *Id.*

The Complaint alleges that in March 2017, RSSB and LEAF entered into a Unit Purchase Agreement, pursuant to which RSSB agreed to purchase 429 units of

LEAF for $40 million to be paid in six bi-annual installments from 2017 to 2019, including an upfront payment of $5 million made in February 2017. *Id*. ¶¶ 9-10. Thereafter, RSSB invested another $5 million in December 2017 and $7.5 million in each of December 2018, March 2019, and December 2019. *Id*. ¶¶ 16-20. As alleged in the Complaint, throughout this period, LEAF repeatedly made false representations to RSSB about the status of its patents and business. *Id*. ¶¶ 34-35. In response to RSSB's repeated requests for information, LEAF later revealed that, contrary to its prior representations to RSSB, LEAF did not own the intellectual property, patents, and patent applications that applied to LEAF's products; Niyikiza and LEAF had used RSSB's investments to enrich Niyikiza personally; and LEAF had been paying its employees to work for other Holdings affiliates. *Id*.

Premised on these allegations, the Complaint alleges claims for fraud, negligent misrepresentation, and equitable fraud against LEAF and Niyikiza; a claim for unjust enrichment against Niyikiza and Holdings; and a derivative claim for breach of LEAF's limited liability company agreement. *Id*. ¶¶ 41-74. The Complaint seeks, among other relief, compensatory damages, rescissory damages, and rescission of the Unit Purchase Agreement.

**B.    The Counterclaims**

On January 5, 2023, Defendants filed the Counterclaims.  The Counterclaims allege that since 2020, the finances of the government of Rwanda and RSSB have been under scrutiny by the International Monetary Fund ("IMF").  Countercls. ¶ 5. As alleged in the Counterclaims, IMF repeatedly set deadlines for RSSB to hire an independent advisory firm to analyze RSSB's asset allocations, but RSSB delayed its compliance efforts and failed to meet those deadlines.  *Id*. ¶¶ 6-13.

The Counterclaims further allege that in April 2022, RSSB finally engaged an advisory firm, at which time RSSB knew that it would soon face public backlash for its failed investments.  *Id*. ¶¶ 12, 15.   Namely, in 2009, RSSB "invested approximately $16 million in a start-up pharmaceutical company, for which RSSB did not receive the anticipated return on its investment, and for which RSSB has since been publicly criticized."  *Id*. ¶ 19.  According to the Counterclaims, RSSB knew that once its investment in LEAF became public, RSSB would "endure substantial criticism and adverse political consequences"—"that is, RSSB knew that it would have to justify why, after an adverse experience with a prior pharmaceutical start-up investment, RSSB invested $40 million in LEAF, an early stage pharmaceutical start-up that was in the initial stages of developing proprietary drug products, rather than investing its pension and similar assets in a more conservative,

predictable and less speculative manner." *Id*. ¶ 22. To preempt criticism, "RSSB filed the Complaint so it could falsely represent on an ostensibly credible platform and as a matter of public record that RSSB had been defrauded by the Defendants into making the investment, and that, therefore, RSSB could not be blamed for its investment decisions." *Id*. ¶ 23. Premised on these allegations, the Counterclaims allege a claim against RSSB for abuse of process. *Id*. ¶¶ 1-44.

Additionally, the Counterclaims allege that immediately prior to the filing of the Complaint, Defendants were negotiating a "prospective contractual relationship" with a "potential acquirer" valued "well in excess of $2 billion." *Id*. ¶¶ 46-47. According to the Counterclaims, "[t]he potential acquirer had completed all due diligence, it confirmed that it wanted to finalize the transaction, it made a written proposal, and Defendants accepted the proposal," but "RSSB intentionally interfered with and prevented the prospective contractual relationship from occurring by, *inter alia*, filing and maintaining the Complaint based on falsehoods, and then refusing to withdraw the Complaint without prejudice and refusing to place the lawsuit on hold, all without prejudice, pending efforts to finalize the transaction, all for unlawful purposes, knowing the effect such actions would have (and did have) on the prospective contractual relationship." *Id*. ¶¶ 48-49. Premised on these allegations,

the Counterclaims allege a claim against RSSB for tortious interference with prospective contractual relations. *Id*. ¶¶ 45-52.

The Counterclaims seek, among other relief, compensatory and punitive damages.[1]

## C.    The Motion to Dismiss

On January 25, 2023, RSSB moved to dismiss the Counterclaims (the "Motion to Dismiss"), and on April 5, 2023, filed its Opening Brief in Support of Motion to Dismiss Counterclaims. Pl.'s Op. Br. in Supp. of Mot. to Dismiss Countercls. [hereinafter, "OB"], Dkt. 10. On May 12, 2023, Defendants filed their Answering Brief in Opposition to Motion to Dismiss Counterclaims. Defs.' and Countercl. Pls.' Ans. Br. in Opp'n to Mot. to Dismiss Countercls. [hereinafter, "AB"], Dkt. 13. On May 26, 2023, RSSB filed its Reply in Support of Motion to Dismiss Counterclaims. Pl.'s Reply in Supp. of Mot. to Dismiss Countercls. [hereinafter, "RB"], Dkt. 14.

This action was reassigned to me on August 8, 2023, and I heard oral argument on November 17, 2023. Dkt. 22.

---

[1] Defendants have withdrawn their request for punitive damages. *See* AB at 15.

## II.    ANALYSIS

RSSB has moved to dismiss the Counterclaims under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).  "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id*. at 537.

The Counterclaims allege two counts: Count I asserts a claim for abuse of process, and Count II asserts a claim for tortious interference with prospective contractual relations.  For the reasons explained below, I recommend that the Motion to Dismiss be granted as to both counts.

### A.    Count I Of The Counterclaims Fails To State A Claim For Abuse Of Process.

Count I of the Counterclaims alleges that RSSB filed and refused to withdraw the Complaint in bad faith for "unlawful purposes constituting abuse of process." Countercl. ¶ 4.  "The elements of a claim for abuse of process are: (1) an ulterior motive; and (2) a willful act in the use of the legal process that is not proper in the

regular conduct of the proceedings, *i.e.*, the current litigation." *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *23 (Del. Ch. July 24, 2013), *aff'd sub nom. Preferred Inv. Servs., Inc. v. T & H Bail Bond, Inc.*, 108 A.3d 1225 (Del. 2015). To state a claim for abuse of process,

> some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required. Merely carrying out the process to its authorized conclusions, even though with bad intentions, will not result in liability. Some form of coercion to obtain collateral advantage, not properly involved in the proceeding itself, must be shown, such as obtaining the surrender of property or the payment of money by the use of the process as a threat or club. In other words, a form of extortion is required, and what is done in the course of negotiation is what typically constitutes the tort.

*Id*. The Counterclaims here fail to state a claim for abuse of process because Defendants do not adequately allege an improper act not authorized by the litigation.

The Counterclaims allege that RSSB filed and refused to withdraw the Complaint "so it could falsely represent on an ostensibly credible platform and as a matter of public record that RSSB had been defrauded by the Defendants into making the investment," thereby avoiding "blame" and "public criticism" for its poor investment decisions. Countercl. ¶¶ 16, 23; *see also id.* ¶¶ 28-29, 40-42; AB at 10. In other words, the Counterclaims allege that RSSB filed a false pleading for an improper purpose, which does not state a claim for abuse of process. *See BRP Hold Ox, LLC v. Chilian*, 2018 WL 5734648, at *7 (Del. Super. Oct. 31, 2018) (dismissing

abuse of process claim where alleged harm "flow[ed] from the initiation of litigation between the parties, not some act or threat not authorized in the carrying out of litigation"); *Pazuniak L. Off. LLC v. Pi-Net Int'l, Inc.*, 2017 WL 4019162, at *4 (Del. Super. Aug. 25, 2017) ("The mere filing of a lawsuit, even if done with an improper motive or based upon an unjustified reading of an agreement, is insufficient to sustain a claim for abuse of process."); *Korotki v. Hiller & Arban, LLC*, 2016 WL 3637382, at *3 (Del. Super. July 1, 2016) (explaining that the "mere filing or maintenance of a lawsuit, even for an improper purpose, is not a proper basis for an abuse of process action" (citation and internal quotation marks omitted)); *Preferred Inv. Servs., Inc.*, 2013 WL 3934992, at *24 (dismissing a claim for abuse of process where the plaintiff allegedly filed suit for an improper purpose, explaining that the defendant "ha[d] not demonstrated that [the plaintiff] perverted the Court's *process* to accomplish some result that the process was not intended by law to accomplish").

Defendants contend that RSSB's improper conduct extends beyond the "mere filing" and "maintenance" of the Complaint because RSSB also sought to exert "negotiating leverage in [an] effort to extract concessions from Defendants to which RSSB was not entitled." Countercl. ¶ 43. This allegation is wholly conclusory—it does not identify who at RSSB attempted to exert such "leverage," if, when, or how RSSB ever communicated threats to Defendants, or the content of any "concessions"

RSSB supposedly sought to obtain. *See In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) ("A trial court is not . . . required to accept as true conclusory allegations 'without specific supporting factual allegations.'" (citation omitted)).

Defendants attempt to bolster this allegation through briefing, expounding that RSSB's "strategy was to coerce Defendants to . . . admit facts known to be false and settle the lawsuit on that basis so that [RSSB] could proffer to the IMF an uncontradicted public record of its fictional account of its LEAF investment." AB at 7. And at oral argument, Defendants went a step further, claiming that RSSB attempted to use the Complaint to coerce Defendants into lying to the IMF. Even if Defendants adequately pled these theories, and they did not,[2] they do not state a claim for abuse of process, which requires pleading an act of coercion or extortion that forces the defendant to give up some "collateral advantage, not properly involved in the proceeding itself." *Preferred Inv. Servs., Inc.*, 2013 WL 3934992, at *23. The claimed advantage here—an admission of liability *on the claims pled in*

---

[2] *See Orman v. Cullman*, 794 A.2d 5, 28 n.59 (Del. Ch. 2002) ("Briefs relating to a motion to dismiss are not part of the record and any attempt contained within such documents to plead new facts or expand those contained in the complaint will not be considered.").

*the lawsuit*—is not collateral to the suit and, therefore, cannot support a claim for abuse of process.

Accordingly, Count I of the Counterclaims should be dismissed.

**B.     Count II Of The Counterclaims Fails To State A Claim For Tortious Interference With Prospective Contractual Relations.**

Count II of the Counterclaims asserts a claim for tortious interference with prospective contractual relations.  The Counterclaims allege that at some point between March and October 2022, Defendants received "a non-binding written acquisition proposal" from an unidentified potential acquirer, which contemplated that "[u]pon the satisfaction of certain criteria and the achievement of certain milestones, the proposal could result in payments to LEAF in excess of $2 billion." Countercls. ¶¶ 31, 34.  Defendants accepted that proposal, but after learning of the Complaint, the potential acquirer "terminated all efforts to finalize the transaction, stating that its decision was based solely on the RSSB lawsuit."  *Id*. ¶¶ 35-36.

"Under Delaware law, the elements of a claim for tortious interference with prospective contractual relations are: (i) the reasonable probability of a business opportunity; (ii) the intentional interference by the defendant with the opportunity; (iii) proximate causation; and (iv) damages."  *KT4 P'rs LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *13 (Del. Super. June 24, 2021).  "In order to adequately allege th[e] first element, the claimant must allege 'a bona fide expectancy'"—"[t]he

claim will be dismissed for failure to establish a reasonable probability of a business opportunity if the opportunity is too speculative." *DG BF, LLC v. Ray*, 2021 WL 776742, at *19 (Del. Ch. Mar. 1, 2021) (citation omitted). To adequately allege the second element, *i.e.*, intentional interference with a business opportunity, the claimant must allege that the defendant had knowledge of the opportunity and intentionally interfered with it. *See KT4 P'rs LLC*, 2021 WL 2823567, at *14 n.203 (recognizing knowledge is collapsed into the second element); *DG BF, LLC*, 2021 WL 776742, at *18 n.146 (same); *Anesthesia Servs., P.A. v. Anesthesia Advantage, P.C.*, 2013 WL 3352672, at *4 (Del. Super. June 27, 2013) (noting that knowledge entails both "knowledge of the [prospective] contract itself" and "knowledge of the fact that [the actor] is interfering [with the opportunity]" (citation and internal quotation marks omitted)).

Assuming the Counterclaims adequately allege a reasonable probability of a business opportunity, they fail to plead nonconclusory facts supporting an inference that RSSB knew of, and interfered with, that opportunity. The Counterclaims allege that "[i]n March 2022, LEAF advised RSSB that it *planned* to market LEAF to potential acquirers," but do not allege that at the time the Complaint was filed, RSSB actually *knew* of the acquisition proposal, which was made "on a strictly confidential basis." Countercls. ¶¶ 31, 34 (emphasis added).

Defendants contend that even if RSSB did not know about the acquisition proposal before it filed the Complaint, "Defendants fully informed [RSSB] of the details of the potential acquisition" after it filed the Complaint, and RSSB nevertheless "repeatedly refused to withdraw the lawsuit without prejudice." AB at 13; Countercls. ¶ 39. In fact, the Counterclaims allege that "Defendants advised *counsel* for RSSB of the specifics of the offer" on an "'attorneys' eyes/ears only' basis"—in other words, Defendants did *not* inform RSSB of the acquisition proposal, or permit its counsel to do so. *Id.* ¶ 38 (emphasis added). The Counterclaims also allege that "Niyikiza advised the President of Rwanda" of the proposal, but do not allege nonconclusory facts supporting an inference that the President of Rwanda acted as RSSB's agent, such that his knowledge could be imputed to RSSB. *Id.* ¶ 38. *See WaveDivision Hldgs., LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1177 (Del. 2012) (affirming determination that knowledge could not be imputed where the plaintiff failed to establish an agency relationship).

Additionally, even if Defendants adequately pled that RSSB knew about the acquisition proposal, there is also nothing in the Counterclaims to support a reasonable inference that RSSB, an investor in LEAF, intended to interfere with that potentially valuable opportunity. Instead, the Counterclaims ascribe an entirely different intention to RSSB: "RSSB filed the Complaint so it could falsely represent

. . . as a matter of public record that RSSB had been defrauded by the Defendants

. . . and that, therefore, RSSB could not be blamed for its investment decisions."

Countercls. ¶ 23.[3] *See Organovo Hldgs., Inc. v. Dimitrov*, 162 A.3d 102, 123 (Del.

Ch. 2017) (dismissing claim for tortious interference with prospective economic

advantage where "[t]here [wa]s . . . nothing in the Complaint to support a reasonable

inference that [the defendant] intended to interfere with the Company's business

relationships" and, "[i]n fact, the Complaint ascribed a different intention to [the

defendant]").

Count II of the Counterclaims therefore fails to state a claim for tortious

interference with prospective contractual relations and should be dismissed.[4]

---

[3] *See also* AB at 10 ("Defendants allege that Plaintiff filed the Complaint *solely* to create a credible (but knowingly false) narrative in the public record in the hope of fending off the IMF actions and political fallout that would result from the impending exposure of Plaintiff's speculative and irresponsible treatment of Rwanda's health and welfare funds." (emphasis added)).

[4] Separately, RSSB argues that Counts I and II of the Counterclaims should be dismissed under the *Noerr-Pennington* doctrine, which provides that "[a] plaintiff who files a lawsuit is 'immune from [] liability whether or not the injuries [to the defendant] are caused by the act of petitioning or are caused by government action which results from the petitioning.'" OB at 19 (quoting *Mariana v. Fisher*, 226 F. Supp. 2d 575, 580 (M.D. Pa. 2002) (alterations in original) (internal quotation marks and citation omitted), *aff'd on other grounds*, 338 F.3d 189 (3d Cir. 2003)). Because I recommend dismissal of both counts on other grounds, I do not address the applicability of *Noerr-Pennington* and any exceptions thereunder.

## III.   CONCLUSION

For the reasons explained above, I recommend that the Motion to Dismiss be granted and Counts I and II of the Counterclaims be dismissed.  This is a final report pursuant to Court of Chancery Rule 144.  Pursuant to the Chancellor's August 8, 2023 reassignment letter, exceptions to this final report are stayed pending final resolution of this matter.

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery


cc:   All counsel of record (by File & ServeXpress)