# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BRENT L. MILLS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. N23C-05-237 MAA CCLD |
| | ) | |
| v. | ) | |
| | ) | |
| BASIL KATSAMAKIS, QUAD | ) | |
| PARTNERS III-A-LP, and | ) | |
| REGINALD MOORE, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: October 17, 2023
Decided: January 18, 2024

*Upon Defendants' Motion to Dismiss:*
**GRANTED.**

## <u>MEMORANDUM OPINION</u>

Jonathan M. Stemerman, Esquire (Argued), of ARMSTRONG TEASDALE LLP, Wilmington, Delaware, Attorney for Plaintiff.

Jason C. Jowers, Esquire, and Sarah T. Andrade, Esquire, of BAYARD, P.A., Wilmington, Delaware, and Jordan D. Weiss, Esquire (Argued), of GOODWIN PROCTER LLP, New York, New York, Attorneys for Defendants.

**Adams, J.**

1

# I.    INTRODUCTION

This action arises out of a Stock Purchase Agreement between Plaintiff and Defendants regarding Plaintiff's acquisition of all the shares in non-party Education Management, Inc. (the "Company"). The remaining claim in this action is a fraud claim relating to alleged material representations and omissions about the costs and timeline of a construction project in connection with Plaintiff's acquisition of the Company. Specifically, Plaintiff alleges it only learned after closing that the construction project was delayed and more expensive than represented.

Defendants move to dismiss, arguing Plaintiff's remaining claim lacks particularity, a showing of known falsity, and reasonable reliance. For the following reasons, the Court finds that Plaintiff fails to state a claim. The Court, therefore, grants Defendants' Motion to Dismiss.

# II.    FACTS[1]

## A.    THE AMENDED AND RESTATED STOCK PURCHASE AGREEMENT

On March 3, 2022, Plaintiff Brent L. Mills, Inc. ("BMI" or "Plaintiff") entered into an Amended and Restated Stock Purchase Agreement ("the Agreement")[2] with

---

[1] The facts are drawn from the Complaint and the exhibit attached thereto, the Amended and Restated Stock Purchase Agreement (Ex. A). The facts outlined in this opinion are limited to those related to the Fraud in the Inducement claim.

[2] The parties originally executed a Stock Purchase Agreement (the "Original Agreement") on October 27, 2021. Compl. ¶ 11. The transaction outlined in the Original Agreement, however, faced pushback and complications from regulators and accreditors, thereby causing the parties to re-evaluate the structure of the transaction. *Id.* ¶ 12.

Defendants Basil Katsamakis ("Katsamakis"), Reginald Moore ("Moore"), and Quad Partners III-A-LP ("Quad") (collectively "the Sellers" or "Defendants") to acquire all of the shares in non-party Education Management, Inc. (the "Company").[3] The Agreement closed on April 26, 2022 (the "Closing"), with BMI paying $12,342,884 to the Sellers.[4]

## B. ACTIONS AND EVENTS PRIOR TO THE CLOSING

The Company is engaged in operating Blue Cliff College, an accredited career college that offers education programs in a variety of fields, including massage therapy, cosmetology, and clinical medical assisting.[5] Blue Cliff College offers both online and in-person classes at several campus locations, including Metairie, Louisiana; Alexandria, Louisiana; Lafayette, Louisiana; and Gulfport, Mississippi.[6]

At the time of the Agreement's negotiation and execution, all Parties understood that Blue Cliff College was "in the process of planning for and performing" a construction project for the building of the Blue Cliff College's Metairie, Louisiana campus (the "Campus construction").[7] The Sellers "repeatedly made representations to BMI regarding the timeline and cost for the Campus construction."[8] Moore and Katsamakis "represented to BMI that the Campus

---

[3] *Id.* ¶¶ 7, 10, 13.
[4] *Id.* ¶ 15.
[5] *Id.* ¶ 8.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 17.
[8] *Id.* ¶ 18.

construction would be completed for a total cost of $900,000 and that the landlord for the Campus property had agreed to provide $900,000 in tenant improvement credits, resulting in a zero-dollar net spend" for the Campus construction.[9] Additionally, Sellers represented that the Campus construction would be complete and ready for use by July 2022.[10]

BMI alleges that Sellers' representations were "known to be false prior to Closing" and the Sellers "failed to share that information with BMI" so the Campus construction costs were "far different" than represented.[11] As evidence of falsity, BMI points to an undated verbal estimate of $900,000 from a contractor with whom Moore and Katsamakis had previously worked.[12] This contractor allegedly "insisted on providing no written estimates or billing records, instead electing to be paid weekly in cash sums always totaling less than $10,000—a dubious practice to which Defendants acquiesced."[13]

By February 4, 2022, Moore and Katsamakis were aware that "reputable and professional contractors were estimating—in writing—that the Campus construction work could cost $1,645,257."[14] By March 15, 2022, the original contractor became "unresponsive and was having difficulty in securing workers and/or permits needed

---

[9] *Id.* ¶ 19.
[10] *Id.* ¶ 20.
[11] *Id.* ¶¶ 23–24.
[12] *Id.* ¶ 25.
[13] *Id.*
[14] *Id.* ¶ 26.

to perform even basic demolition work at the Campus[.]"[15] Moore and Katsamakis were aware of these issues and began seeking additional contractors to complete the Campus construction.[16] On April 11, 2022, Moore and Katsamakis received another written estimate for $1,728,146.[17] In the weeks leading up to Closing, internal e-mails "reveal[ed] that the timing for the Campus construction was significantly behind—and in fact that no meaningful progress on the construction had even occurred as of the date of Closing."[18] BMI alleges it was not informed of the unreliability of the original estimate, the newer and higher estimates, nor that there were construction delays prior to Closing.[19]

## C. ALLEGED DAMAGES

BMI asserts that as a result of "Sellers' misrepresentations and omissions," Buyer has incurred a minimum of the following losses: (1) "$1,900,000 in additional construction costs;" (2) "$400,000 in tenancy costs due to the construction delay;" and (3) "$3,000,000 in lost contribution margin at the Campus location due to lower student count caused by construction delays."[20] BMI alleges that "it would not have

---

[15] *Id.* ¶ 27.
[16] *Id.*
[17] *Id.* ¶ 28.
[18] *Id.* ¶ 29.
[19] *Id.* ¶ 30.
[20] *Id.* ¶ 33.

proceeded to Closing based upon the financial terms set out in the Agreement" had it "known the truth regarding the Campus construction cost and timeline."[21]

## III. PROCEDURAL HISTORY

On May 24, 2023, Plaintiff filed a complaint alleging three counts: (1) Fraud in the Inducement;[22] (2) Unjust Enrichment;[23] and (3) Breach of Contract (In the Alternative).[24]

On July 18, 2023, Defendants filed a Motion to Dismiss all claims. Briefing concluded on September 8, 2023. The Court held oral argument on October 17, 2023. On the record, the Court granted the Motion to Dismiss as to Plaintiff's Unjust Enrichment claim (Count II) and the Breach of Contract claim (Count III), and reserved decision on the Fraud in the Inducement claim (Count I).[25]

## IV. STANDARD OF REVIEW

On a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the Court must: "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party[.]"[26]

---

[21] *Id.* ¶ 34.
[22] *Id.* ¶¶ 35–40.
[23] *Id.* ¶¶ 41–44.
[24] *Id.* ¶¶ 45–49.
[25] D.I. 24.
[26] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (internal citations omitted).

A motion to dismiss for failure to state a claim will not be granted "if the plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof under the complaint."[27]

## V.   ANALYSIS

To survive a motion to dismiss claim for fraud, the plaintiff must allege that:

> (1) defendant falsely represented a material fact or omitted facts that the defendant had a duty to disclose; (2) defendant knew that the representation was false or made with a reckless indifference to the truth; (3) defendant intended to induce plaintiff to act or refrain from action; (4) plaintiff acted in justifiable reliance on the representation; and (5) plaintiff was injured by its reliance on defendant's representation.[28]

Pursuant to Superior Court Civil Rule 9(b), fraud must be "stated with particularity." The complaint must allege sufficient well-pleaded facts "from which it can reasonably be inferred that this 'something' was knowable, and that the defendant was in a position to know it."[29] The party asserting a claim for fraudulent inducement bears the burden of proof.[30]

---

[27] *Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC*, 2010 WL 2802409, at *3 (Del. Super. July 12, 2010) (internal citations omitted).

[28] *ITW Glob. Invs. Inc. v. Am. Indus. P'rs Cap. Fund IV, L.P.*, 2015 WL 3970908, at *5 (Del. Super. June 24, 2015) (internal citations omitted).

[29] *Iotex Commc'ns, Inc. v. Defries*, 1998 WL 914265, at *4 (Del. Ch. Dec. 21, 1998).

[30] *E.g.*, *Channel Medsystems, Inc. v. Boston Sci. Corp.*, 2019 WL 6896462, at *40 (Del. Ch. Dec. 18, 2019).

**A. PLAINTIFF FAILS TO PLEAD FALSE STATEMENTS OR MISREPRESENTATIONS WITH PARTICULARITY.**

Plaintiff alleges that Defendants misrepresented that the Campus construction would cost $900,000, resulting in a zero-dollar net spend, and that it would be completed by July 2022.[31]  As proof that Defendants knew these were misrepresentations, Plaintiff points to Defendants entering into a verbal "dubious" agreement with a contractor, receiving additional estimates for significantly higher amounts from other contractors, knowing the original contractor failed to begin work in a timely manner, and failing to share these facts with Plaintiff.[32]

**i.    The Court will not consider any occurrences after March 3, 2022.**

A majority of the allegations Plaintiff relies upon to support its claim for fraud depend on conduct that occurred after the execution of the Agreement.  Delaware law makes clear, however, that conduct occurring after the execution of an agreement may be relevant for breach of contract, but not for fraudulent inducement. *ITW Global Investments Inc. v. American Industrial Partners Capital Fund IV, L.P.*,[33] a decision from this court regarding fraud, is instructive.  In its complaint, the plaintiff alleged that defendant "manipulated the Financial Statements by engaging in the alleged sham sales" and did so before entering into, and with intent to induce

---

[31] Compl. ¶¶ 19–20.
[32] *Id.* ¶¶ 24–30.
[33] 2015 WL 3970908 (Del. Super. June 24, 2015).

plaintiff to enter into, the Stock Purchase Agreement.[34] The court reviewed the timing of the alleged misrepresentations and held that the conduct *before* the parties entered into the purchase agreement sufficiently pled fraud.[35] Conduct occurring *after* the execution of the agreement, by contrast, may be relevant for breach of contract, but not for fraudulent inducement.[36]

The Parties executed the Agreement on March 3, 2022[37] and closed on April 26, 2022.[38] As such, the following allegations will not be considered for Plaintiff's claim for fraud in the inducement:

- The $1,728,146 estimate Defendants allegedly received on April 11, 2022;[39]

- Defendants' internal e-mails in the "weeks leading up to Closing[,]" indicating that the Campus construction was significantly behind;[40] and

---

[34] *Id.* at *7.

[35] *Id.* (distinguishing fraud in the inducement from breach of contract, finding the conduct that occurred before the purchase agreement sufficiently avoided impermissible bootstrapping).

[36] *Id.* *See also Air Data Sys., LLC v. L-3 Commc'ns Corp.*, 2019 WL 328429, at *6 (Del. Super. Jan. 23, 2019) ("A plaintiff cannot rely on a misrepresentation made after the parties executed an agreement for a fraudulent inducement claim. Fraudulent statements made after the execution of an agreement relate to the performance of the contract, not the inducement of the contractual relationship.") (internal quotations omitted).

[37] Compl. ¶ 13.

[38] *Id.* ¶ 15.

[39] *Id.* ¶ 28.

[40] *Id.* ¶ 29.

- The assertion that Defendants were aware "by March 15, 2022" of the issues with the original contractor and the resulting delays.[41]

### ii. The remaining alleged misrepresentations are not pled with sufficient particularity.

To meet the particularity requirements for fraud, a complaint must allege: "(1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[42] Although the particularity requirement does not sound the death knell for a plaintiff, a certain heightened threshold must be met in order to survive a motion to dismiss.

The particularity requirement is exemplified by this court's decision in *Flowshare, LLC v. GeoResults, Inc.*[43] In *Flowshare*, the court held the plaintiff stated a claim for fraud when it alleged who made the statements, that the statements were made via email, the dates the emails were sent, and that the emails were sent prior to the execution of the agreement.[44] By contrast, in *Fortis Advisors LLC v. Dialog Semiconductor PLC*[45] the Court of Chancery held that the particularity requirement was not met because the complaint was not particular enough when the

---

[41] *Id.* ¶ 27.
[42] *Abry P'rs V, L.P. v. F & W Acq. LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).
[43] *Flowshare, LLC v. GeoResults, Inc.*, 2018 WL 3599810 (Del. Super. July 25, 2018).
[44] *Id.* at *6.
[45] *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371 (Del. Ch. Jan. 30, 2015).

plaintiff failed to identify who made the statements, nor where or when any of the statements were made.[46] The court further noted that the failure to provide a specific time period forced the defendant to "guess," which cannot satisfy the pleading standard.[47]

Here, the Complaint fails to provide the time of the alleged false representations other than through a heading: "Pre-Closing Events and Conduct by Defendants[.]"[48] Unlike the conduct taking place *after* the Agreement's execution, the Complaint includes no dates for when the remaining misrepresentations allegedly occurred. For example, Plaintiff alleges that it learned in a post-closing investigation that Defendants knew their representations regarding the campus construction and timeline were false prior to Closing,[49] but the Complaint does not indicate if the alleged representations were before or after the Agreement was executed. Nor did the Complaint identify when Defendants disclosed the $900,000 estimate and tenant improvement credit, or that the Campus construction would be completed by July of 2022.[50] Such bald allegations cannot support a claim for fraud.

---

[46] *Id.* at *6–8. The court in *Fortis Advisors* did differentiate between misrepresentations and omissions, noting that for omissions, a broader time period is reasonable given "it is logical to tie a misrepresentation to a period of time" when the information was concealed. *Id.* at 8. Where Plaintiff here also asserts misrepresentations, in part, through omissions of information, the affirmative misrepresentations are still not particularized as to time, rendering this case different from distinguished cases in *Fortis Advisors*.

[47] *Id.* at *7.

[48] Compl. Section III. D.

[49] *Id.* ¶ 24.

[50] *See, e.g., id.* ¶¶ 20, 25.

11

Here, Plaintiff attributed the statements to Moore and Katsamakis, but otherwise provided no detail about how or when the representations were made. Like defendants in *Fortis Advisors*, Defendants are left to guess about the details of the alleged misrepresentations, and the Complaint here suffers the same fate. Plaintiff has failed to plead the alleged misrepresentations with the required particularity and the Court will grant Defendants' Motion to Dismiss Plaintiff's fraud claim.

## B.  PLAINTIFF'S RELIANCE ON THE ALLEGED FALSE STATEMENTS WAS NOT REASONABLE.

Even if the particularity requirements were met, Plaintiff also fails to plead that reliance on the alleged misrepresentations was justifiable.[51]  Reliance is determined on an objective standard[52] viewed in the context of the parties' relationship, knowledge, and experience.[53]  The victim of fraud "cannot close his eyes to a known risk . . . he cannot close his eyes to a risk that is obvious[.]"[54]

Delaware courts also distinguish between fraudulent statements and approximations.[55]  Fraudulent statements tend to be conceived "from the get-go,"

---

[51] *See, e.g.*, *ITW Glob. Invs.*, 2015 WL 3970908, at *8 ("To establish a claim for fraud, a plaintiff must have acted in justifiable reliance on the representation.").

[52] *Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2018 WL 6311829, at *33 (Del. Ch. Dec. 3, 2018).

[53] *Arwood v. AW Site Servs., LLC*, 2022 WL 705841, at *23 (Del. Ch. Mar. 9, 2022) (internal citations omitted).

[54] *Id.* at *24 (quoting *AMPAT/Midwest, Inc. v. Illinois Tool Works Inc.*, 896 F.2d 1035, 1042 (7th Cir. 1990)).

[55] *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 208–09 (Del. Ch. 2006).

where a plaintiff demonstrates "circumstances suggesting they were unsound from the inception."[56] In *Trenwick America Litigation Trust v. Ernst & Young, L.L.P*, the court found that a company's public disclosure statements were not fraudulent when they "expressly indicate[d] that estimates regarding potential claims and the reserves necessary to address them [were] imprecise and [could not] be guaranteed."[57] The court rejected the plaintiff's argument that the estimates were fraudulent just because they turned out to be wrong and the company became insolvent.[58]

Delaware law is "reluctant to permit a plaintiff to premise a fraud claim on the failure of future predictions to come true, because such predictions are, by definition, not statements of past fact, but necessarily imprecise attempts to foresee the future."[59] Here, Plaintiff asserts it relied on Defendants' representations that the Campus construction would only cost $900,000 and would be completed by a particular date. The Court finds this reliance unreasonable.

First, as Plaintiff concedes, the $900,000 was an *estimate* from the contractor.[60] Even if this Court agreed with Plaintiff's characterization of the

---

[56] *Id.* at 209.

[57] *Id.* at 208–09.

[58] *Id.* at 209 ("There are no pled facts, aside from an indication that those estimates turned out to be too low, that suggest that the estimates were irresponsibly prepared, much less that they were intentionally understated[.]"). *Aff'd sub nom Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (TABLE).

[59] *Homan v. Turoczy*, 2005 WL 2000756, at *15 (Del. Ch. Aug. 12, 2005) ("It is the law in Delaware that statements of opinion concerning probable future events cannot be deemed fraud or misrepresentation when, as here, they were clearly made as such.").

[60] Compl. ¶ 25.

"dubious" contractor, the fact that the cost was an *estimate*, indicates that it could change. The assertion that Plaintiff relied on an *estimate*, which in its plain meaning suggests the amount could vary, allows the Court to find that reliance was not reasonably justified.

Second, the parties agreed to the fact that the Campus construction project was "in the process of determining the required capex and tenant improvement" in the Company Disclosure Schedule to the Stock Purchase Agreement ("the Disclosures").[61] The representations about the Campus construction's completion date and its cost were not included in either the Agreement or the Disclosures. Instead, the parties agreed that the design process was ongoing, and the capex was not yet determined.[62] For Plaintiff to now allege that it entered into the Agreement relying on the cost and timeliness promises is unreasonable given Plaintiff's explicit agreement to the unknowns in the Agreement. Therefore, the Court finds that there was no justifiable reliance on the alleged misrepresentations.

---

[61] Defs.' Mot. to Dismiss, Ex. 1. Company Disclosure Schedule to Stock Purchase Agreement, § 5.05(g)(2). The Court notes that when deciding a motion to dismiss the Court considers only the allegations in the complaint, and "documents referred to in a complaint." *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006). Here, Plaintiff provided the Amended and Restated Stock Purchase Agreement as Exhibit A to the Complaint, which references the Disclosures. Therefore, this Court considers Exhibit 1 incorporated by reference and within the scope of review for the motion to dismiss. The Court additionally notes that Plaintiff did not object to the use of the Disclosures in its brief, nor in oral argument so the Court considers use of the Disclosures unopposed.
[62] Defs.' Mot. to Dismiss, Ex. A. § 5.05(g)(2).

## VI. CONCLUSION

In conclusion, Defendants' Motion to Dismiss is GRANTED pursuant to Superior Court Civil Rule 12(b)(6) because Plaintiff has failed to state a claim for Fraud in the Inducement.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**