**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MASSANDRA CAPITAL IV, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CEAI ASPEN PLACE MANAGER, LLC, | ) | C.A. No. N23C-10-136 EMD CCLD |
| ROBERT ESREY, and R. LEE HARRIS, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: April 19, 2024
Decided: July 15, 2024

*Upon Defendants' Motion to Dismiss*
**GRANTED**

Travis S. Hunter, Esquire, Alexandra M. Ewing, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware. *Attorneys for Plaintiff Massandra Capital IV, LLC*.

Douglas D. Herrmann, Esquire, Emily L. Wheatley, Esquire, Troutman Pepper Hamilton Sanders LLP, Wilmington, Delaware, R. Thomas Avery, Esquire, Stephen M. Hoeplinger, Esquire, Capes, Sokol, Goodman & Sarachan, P.C., St. Louis, Missouri. *Attorneys for Defendants CEAI Aspen Place Manager, LLC, Robert Esrey, and R. Lee Harris*.

**DAVIS, J.**

## I.     INTRODUCTION

This is a breach of contract action assigned to the Complex Commercial Litigation Division of this Court. Plaintiff Massandra Capital IV, LLC ("Massandra") alleges that Defendants CEAI Aspen Place Manager, LLC ("CAPM"), Robert Esrey, and R. Lee Harris (collectively, "Defendants") breached obligations under a "Guaranty of Recourse Obligations" contract (the "Guaranty"). Defendants moved to dismiss Massandra's Amended Complaint.

For the reasons stated below, the Court **GRANTS** Defendants' motion.

## II. RELEVANT FACTS[1]

### A. THE PARTIES

Massandra is a Delaware limited liability company.[2] Massandra is the majority owner of non-party CEAI Aspen Place, LLC (the "LLC").[3]

CAPM is an Oklahoma limited liability company.[4] CAPM owns the remaining interest in the LLC.[5] CAPM is a Guarantor under the Guaranty.[6] Robert Esrey and R. Lee Harris are residents of Kansas and Guarantors under the Guaranty.[7]

### B. THE PARTIES' AGREEMENTS

Massandra and CAPM formed the LLC for the purpose of purchasing and operating the Aspen Place apartment complex ("Aspen Place") in Oklahoma City, Oklahoma.[8] The LLC purchased Aspen Place in January 2015.[9] CAPM was initially responsible for managing Aspen Place, and Massandra was a non-managing member.[10]

Massandra insisted on executing the Guaranty to protect itself from defined "Losses" resulting from Aspen Place.[11] The parties entered the Guaranty on April 30, 2015.[12] The Guaranty designates CAPM, Mr. Esrey and Mr. Harris as Guarantors.[13] Each Guarantor

---

[1] The following facts are derived from the allegations in Massandra's Amended Complaint and the documents integral thereto. D.I. No. 16 (hereinafter "Am. Compl."). These allegations are presumed to be true solely for purposes of this Motion.
[2] *Id.* ¶ 7.
[3] *Id.*
[4] *Id.* ¶ 8.
[5] *Id.*
[6] Am. Compl., Ex. A (hereinafter "Guaranty") at 1.
[7] *Id.*; Am. Compl. ¶¶ 9-10.
[8] Am. Compl. ¶ 16.
[9] *Id.*
[10] *Id.* ¶ 17.
[11] *Id.*; *see also* Guaranty.
[12] *See* Guaranty at 1.
[13] *Id.*

"irrevocably and unconditionally guarantee[d] to [Massandra] the payment and performance of the Guaranteed Obligations."[14] As relevant here, the Guaranteed Obligations included:

> (a) any losses, actual damages, costs, fees, expenses, claims, suits, judgments, awards, liabilities (including strict liabilities), obligations, debts, diminutions in value, fines, penalties, charges, amounts paid in settlement, foreseeable and unforeseeable consequential damages, litigation costs, reasonable attorneys' fees, and investigation costs of whatever kind or nature, and whether or not incurred in connection with any judicial or administrative proceedings, actions, claims, suits, judgments or awards (collectively, "Losses") incurred or accrued by [Massandra] as a result of or otherwise relating to any of the following:

> (i) fraud, intentional misrepresentation, or willful misconduct by Guarantor or any of its Affiliates in connection with this Guaranty, the Operating Agreement or the Environmental Indemnity (collectively, the "Investment Agreements") or otherwise relating to [Massandra]'s preferred equity investment in the Company;

> . . . .

> (iii) any act of material waste of [Aspen Place] or any portion thereof, or, during the continuance of any Event of Default (as defined below), the removal or disposal of any portion of the Project;[15]

An operating agreement (the "Operating Agreement") governs the LLC and is also relevant to this dispute.[16] Operating Agreement Section 3.3 governs the parties' respective obligations to make capital contributions.[17] The Operating Agreement provided that CAPM would be primarily responsible for making additional capital contributions as necessary.[18] Operating Agreement Section 3.3(d) states, in pertinent, part:

> If [CAPM] fails to make the Additional Capital Contribution to the [LLC] pursuant to Section 3.3(b), then . . . (1) [CAPM] shall have no approval or consent rights under this Agreement and shall be relieved of any and all decision-making authority under this Agreement and in connection with the Project, including, without limitation, all rights and powers to act as Manager, if, at the time in question, [CAPM] is acting as Manager, in which event [Massandra] shall automatically become the Manager without further act of the Members, and (2) [Massandra] shall

---

[14] *Id.* § 1.1
[15] *Id.* § 1.2(a) (emphases omitted).
[16] The Court may consider this document because it is integral to the Amended Complaint as explained below. *See infra* Section V.A.
[17] D.I. No. 18 (hereinafter "Defs.' Mot."), Ex. 1 (hereinafter "Operating Agreement") § 3.3.
[18] *Id.* § 3.3(b).

3

have the right, but not the obligation, to elect to contribute capital to the [LLC] in the principal amount of the Default Amount, as more particularly described below.

If [Massandra] elects to contribute capital to the [LLC], then (1) the Percentage Share for [CAPM] shall be decreased by an amount equal to a fraction, the numerator of which is 115% of the Default Amount and the denominator of which is the total of all Capital Contributions from the Members (inclusive of the amount contributed by [Massandra]), and (2) the Percentage Share for [Massandra] shall be increased by a like amount. For example, if the Percentage Share for [CAPM] is 50%, the Default Amount is $50,000, and the total of all Capital Contributions is $1,000,000 (inclusive of the $50,000 amount contributed by [Massandra]), then:

the Percentage Share of [CAPM] shall be reduced as follows:

$50\% - [115\% \times \$50,000 \div \$1,000,000] = 44.25\%$; and

the Percentage Share of [Massandra] shall be increased as follows:

$50\% + [115\% \times \$50,000 \div \$1,000,000] = 55.75\%$.

## C. THE PURPORTED BREACH OF THE GUARANTY

CAPM, acting on the LLC's behalf, contracted with Cohen-Esrey Communities, LLC ("Cohen"), an affiliate of CAPM, to manage and renovate Aspen Place.[19] Cohen retained its wholly owned subsidiary, Construction Technologies, LLC ("Technologies"), as the general contractor for the renovations.[20]

Aspen Place contained aluminum electrical wiring, which is a recognized fire hazard.[21] Cohen and Technologies thus made a plan to mitigate the fire risk.[22] The plan involved replacing each unit's electrical panel and all of the electrical switches and outlets.[23] Cohen estimated that the work would cost $340,000.[24]

---

[19] Am. Compl. ¶ 23.
[20] *Id.* ¶¶ 3, 23.
[21] *Id.* ¶¶ 24-26.
[22] *Id.* ¶¶ 26-29.
[23] *Id.* ¶¶ 28-29.
[24] *Id.* ¶ 29. Cohen estimated that replacing the electrical panels would cost $179,000 and replacing the switches and outlets would cost $161,000. *Id.* ¶ 28.

The electrical repairs did not go as planned. Instead, Technologies subcontracted the work to a third party, Advanced Electric.[25] Advanced Electric's scope of work only included half the planned repairs—specifically, replacing the electrical panels but not the switches and outlets.[26] Moreover, Advanced Electric did not replace the electrical panels correctly.[27] Nevertheless, Cohen and Technologies "both represented that the work had been performed properly."[28]

Massandra, which had a passive role in the LLC, did not learn about the insufficient electrical repairs until May 2019.[29] Massandra discovered the repair issues when Denver Realty Group, a potential purchaser for Aspen Place, identified multiple electrical code violations.[30] Denver Realty Group reduced its offer price by $1.8 million in response to the electrical problems.[31] That proposed sale ultimately did not occur.[32]

Thereafter, Massandra replaced CAPM as manager of the Project.[33] Massandra funded capital calls that allowed the LLC to have the electrical problems remedied.[34] Massandra also funded the LLC's arbitration proceedings against Cohen and Technology.[35] Defendants have refused to reimburse Massandra for its contributions to the LLC.[36]

---

[25] *Id.* ¶ 31.
[26] *Id.*
[27] *Id.* ¶ 32.
[28] *Id.* ¶ 33.
[29] *Id.* ¶ 34.
[30] *Id.* ¶ 35.
[31] *Id.*
[32] *Id.* ¶ 39.
[33] *Id.* ¶ 37.
[34] *Id.* ¶¶ 37-38.
[35] *Id.* ¶ 39.
[36] *Id.* ¶ 42.

## D.  CURRENT LITIGATION

Massandra filed its initial Complaint on October 17, 2023.[37]  Defendants moved to dismiss the Complaint or for a more definite statement on November 16, 2023.[38]  Massandra responded by filing an Amended Complaint on January 19, 2024.[39]  The Amended Complaint alleges breach of the Guaranty (Count I) and seeks a declaration that Defendants  must reimburse Massandra pursuant to the Guaranty (Count II).[40]  Defendants moved again to dismiss the Amended Complaint or for a more definite statement on February 2, 2024.[41]  Massandra opposed the Motion on March 20, 2024.[42]  Defendants replied to Massandra's opposition on April 5, 2024.[43]  The Court heard oral argument on April 29, 2024.  At the conclusion of the hearing, the Court took the Motion under advisement.

## III.    PARTIES' CONTENTIONS

## A.  MOTION

Defendants make several arguments against Massandra's Amended Complaint. Defendants first argue that any Losses[44] sustained in this matter were borne by the LLC, not Massandra.[45]  Defendants continue that the increased ownership stake in the LLC that Massandra received pursuant to Operating Agreement Section 3.3(d) means that Massandra did not sustain any Losses under the Guaranty.[46]  Defendants next claim that Massandra has not pled "waste" as that term is used at common law, so any Losses Massandra might have incurred are not subject

---

[37]  D.I. No. 1.
[38]  D.I. No. 8.
[39]  Am. Compl.
[40]  *Id.* ¶¶ 43-55.
[41]  Defs.' Mot.
[42]  D.I. No. 21 (hereinafter "Pl.'s Opp'n").
[43]  D.I. No. 24 (hereinafter "Defs.' Reply").
[44]  For the avoidance of doubt, the Court uses this term as it is defined in the Guaranty.  *See* Guaranty § 1.2(a).
[45]  Defs.' Mot. at 7-9.
[46]  *Id.* at 9-13.

to reimbursement on that basis.[47] Last, Defendants assert that Massandra's fraud allegations lack the requisite particularity and must either be dismissed or more definitely stated.[48]

## B. OPPOSITION

Massandra opposes each of Defendants' arguments. Massandra maintains that the broadly defined Losses makes no explicit distinction between expenses Massandra incurs directly and expenses Massandra incurs through the LLC.[49] Massandra then argues that the Court may not consider the Operating Agreement at this stage because it is extrinsic to the Complaint.[50] Massandra also contends that the Operating Agreement and Section 3.3(d) are "irrelevant" to this action because Section 3.3(d) does not provide for an exclusive remedy.[51] Massandra concludes by explaining that it did not bring claims for common-law waste or fraud, so those standards are inapplicable to this contractual litigation.[52]

## IV. STANDARD OF REVIEW

Upon a motion to dismiss under Rule 12(b)(6), the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[53] The Court does not, however, accept "conclusory allegations that lack specific supporting factual allegations."[54]

---

[47] *Id.* at 13-20.
[48] *Id.* at 20-21.
[49] Pl.'s Opp'n at 7-10.
[50] *Id.* at 11-12.
[51] *Id.* at 12-13.
[52] *Id.* at 14-20.
[53] *See ET Aggregator, LLC v. PFJE AssetCo Hldgs. LLC*, 2023 WL 8535181, at *6 (Del. Super. Dec. 8, 2023).
[54] *Id.* (quoting *Ramunno v. Crawley*, 705 A.2d 1029, 1034 (Del. 1998)).

## V.     DISCUSSION

### A.  THE COURT MAY CONSIDER THE OPERATING AGREEMENT.

The "universe of facts" on a Rule 12(b)(6) motion is typically limited to the complaint's allegations, but there are exceptions.[55]  For one, "[t]he trial court may . . . take judicial notice of matters that are not subject to reasonable dispute."[56]  A court may also consider documents that are incorporated into the complaint by reference "[w]hen a plaintiff expressly refers to and heavily relies upon" the documents.[57]   A court may similarly consider a document that is integral to the complaint in that the document "is the source for the . . . facts as pled in the complaint."[58]

The Court finds that the Operating Agreement is integral to Massandra's Amended Complaint.  This litigation's factual basis flows from the Operating Agreement.  The existence of the LLC, the purpose of the Project, Massandra's ability to assume management of the LLC, and Massandra's right to make the at-issue capital contributions all stem directly from the Operating Agreement.  The Guaranty, which Massandra appended to the Amended Complaint, expressly references the Operating Agreement as the source for various terms.[59]  Indeed, the parties only entered the Guaranty as "an inducement" to Massandra entering the Operating Agreement.[60] Additionally, Massandra alleges as a basis for reimbursement under the Guaranty that it was

---

[55] *See Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020) (citations omitted).

[56] *Id.* (alteration in original) (quoting *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d. 162, 169 (Del. 2006)).

[57] *Morrison v. Berry*, 191 A.3d 268, 275 n.20 (Del. 2018) (alteration in original) (quoting *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012)).

[58] *Sofregen Med. Inc. v. Allergan Sales, LLC*, 2021 WL 1400071, at *4 (Del. Super. Apr. 1, 2021) (omission in original) (quoting *Fortis Advisors LLC v. Allergan W.C. Hldg. Inc.*, 2019 WL 5588876, at *3 (Del. Ch. Oct. 30, 2019)).

[59] Guaranty at Recitals ("All terms used but not defined in this Guaranty shall have the meanings ascribed to such terms in the Operating Agreement."); *see also id.* §§ 1.2(a)(i), 1.2(a)(vi), 1.2(b)(i), 1.2(b)(ii), 1.2(b)(iv), 5.12(a).

[60] *Id.* at Recitals.

defrauded in connection with the Operating Agreement.[61] The Amended Complaint even quotes from the Operating Agreement to explain the LLC's purpose.[62]

The Operating Agreement is the source of facts alleged in the Amended Complaint. This litigation would not exist without the Operating Agreement and the actions taken under that agreement by the parties. Massandra contends that this case only pertains to the Guaranty, not the Operating Agreement;[63] but the Guaranty only exists, and Massandra's purported Losses were only incurred, pursuant to the Operating Agreement. Accordingly, the Court will consider the Operating Agreement as it is integral to Massandra's Amended Complaint.

## B. MASSANDRA'S CAPITAL CONTRIBUTIONS ARE NOT "LOSSES" UNDER THE GUARANTY.

"Delaware adheres to the 'objective' theory of contracts, *i.e.* a contract's construction should be that which would be understood by an objective, reasonable third party."[64] The Court will enforce the plain meaning of a contract when there is only one reasonable interpretation thereof.[65] "An unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract."[66]

"Delaware law holds that where a contract incorporates another contract by reference, the two contracts will be read together as a single contract."[67] As noted above, the Guaranty repeatedly references the Operating Agreement and relies upon the Operating Agreement's terms.[68] The Court will read the two contracts together as a single contract.[69]

---

[61] Am. Compl. ¶ 41.
[62] *Id.* ¶ 16.
[63] Pl.'s Opp'n at 11.
[64] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (quoting *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).
[65] *Id.* (citing *Rhone-Poulenc Basic Chem. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).
[66] *Id.* (citations omitted).
[67] *Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at *18 n.148 (Del. Ch. Dec. 30, 2020) (quoting *Duff v. Innovative Discovery LLC*, 2012 WL 6096586, at *12 (Del. Ch. Dec. 7, 2012)).
[68] *See supra* note 59 and accompanying text.
[69] *See Mack*, 2020 WL 7774604, at *18 n.148.

A threshold issue is whether Massandra's capital contributions, made pursuant to Operating Agreement Section 3.3(d), are Losses under Guaranty Section 1.2(a). The Court finds that Massandra's capital contributions are not Losses. Allowing Massandra to be reimbursed for the contributions would lead to an absurd result that no reasonable party would have agreed to at the time of contracting. That is because Operating Agreement Section 3.3(d) effectively allows Massandra to purchase equity in the LLC from CAPM. So, if Massandra could then use the Guaranty to force CAPM[70] to reimburse Massandra's contributions under Section 3.3(d), CAPM would functionally be contributing additional capital to the LLC while simultaneously giving Massandra a greater ownership share of the LLC. That result constitutes a pure windfall for Massandra.[71] The Court thus finds that Massandra's interpretation of the Guaranty is unreasonable.

The Court also notes that Massandra's capital contributions were voluntary. Operating Agreement Section 3.3(d) states that "[Massandra] shall have the right, *but not the obligation*, to elect to contribute capital to the [LLC]."[72] The Court finds this voluntariness weighs against a finding that the contributions are Losses under the Guaranty. This is not a circumstance where the governing documents forced Massandra to make capital contribution to the LLC. Instead, Massandra was able to consider whether the additional equity was worth the cost before contributing capital. Massandra did not "lose" anything—it got exactly what was the bargained-for agreement.

---

[70] Defendants are jointly and severally liable for Guaranteed Obligations under the Guaranty, so CAPM could be made to pay all of the covered Losses. *See* Guaranty § 1.1.
[71] Massandra does not contend otherwise. Instead, Massandra argues that nothing in the Operating Agreement specifically prohibits this form of double recovery. *See* Pl.'s Opp'n at 13. But as much as the Court prioritizes the language of a contract, the Court will not "deem reasonable" strained interpretations of the language to which no reasonable contracting party would have agreed. *See Osborn*, 991 A.2d at 1159.
[72] Operating Agreement § 3.3(d) (emphasis added).

10

To be clear, the Court is not holding that a breach of the Guaranty may have occurred, but Massandra has suffered no damages. Under Delaware law, an action for breach will lie even where only nominal damages are available.[73] Here, no breach occurred because it is unreasonable to define Losses under the Guaranty to include the voluntary capital contributions contemplated by Operating Agreement Section 3.3(d). Because Massandra's contributions are not Losses, there was never a Guaranteed Obligation owed by Defendants.[74] Therefore, Massandra has not raised a reasonably conceivable claim that Defendants breached the Guaranty.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion.

**IT IS SO ORDERED.**

July 15, 2024, 2024
Wilmington, Delaware

/s/ Eric M. Davis
Eric M. Davis, Judge

cc:    File&ServeXpress

---

[73] *See, e.g.*, *Medlink Health Sols., LLC v. JL Kaya, Inc.*, 2024 WL 1192781, at *6 (Del. Super. Mar. 20, 2024) (citing *In re P3 Health Grp. Hldgs., LLC*, 2022 WL 16548567, at *10) (Del. Ch. Oct. 31, 2022)).
[74] *See* Guaranty § 1.2(a) (defining Guaranteed Obligations as a subset of Losses).

11