## In re GENERAL MOTORS (HUGHES) SHAREHOLDER LITIGATION.

No. 260, 2005.

Supreme Court of Delaware.

Submitted: Dec. 21, 2005.

Decided: March 20, 2006.

---

Michael Hanrahan, Esquire (argued) and Paul A. Fioravanti, Jr., Esquire, Prickett, Jones & Elliott, P.A., Wilmington, Delaware, Jay W. Eisenhofer, Esquire, Geoffrey C. Jarvis, Esquire (argued), James R. Banko, Esquire and Brad deLeeuw, Esquire, Grant & Eisenhofer, P.A., Wilmington, Delaware, co-counsel for plaintiffs-appellants.

R. Franklin Balotti, Esquire, Lisa A. Schmidt, Esquire, Srinivas M. Raju, Esquire, Richards, Layton & Finger, Wilmington, Delaware, and Robert J. Kopecky, Esquire (argued), Kirkland & Ellis, Chicago, Illinois, for defendant-appellee, General Motors Corporation and individual defendants-appellees.

Edward P. Welch, Esquire (argued), Edward B. Micheletti, Esquire, Seth M. Beausang, Esquire, T. Victor Clark, Esquire and Jenness E. Parker, Esquire, Skadden, Arps, Slate, Meacher & Flom, Wilmington, Delaware, for defendant-appellee/cross-appellant, The News Corporation Limited.

Before STEELE, Chief Justice, HOLLAND and RIDGELY, Justices.

HOLLAND, Justice.

In this appeal, we affirm the final judgments that were entered by the Court of Chancery. Wyser–Pratte Management Co., Inc., Robert La Marchi, Ronald Young and George Silverman (the Plaintiffs), instituted this lawsuit against the defendant, General Motors Corporation ("GM") and the defendant, The News Corporation Limited ("TNCL"),[1] challenging a series of transactions by which TNCL acquired a significant interest in Hughes Electronics Corporation ("Hughes").[2] Hughes was previously a wholly-owned subsidiary of GM. The individuals who were directors of GM at the relevant times have also been named as defendants (the "Individual" or "Director" defendants).[3]

---

1. TNCL is a South Australian corporation headquartered in New South Wales, Australia.

2. Hughes was renamed The DIRECTV Group, Inc. on March 16, 2004. The Court of Chancery and the Complaint referred to the entity as "Hughes." For purposes of consistency, we also use "Hughes" in this opinion.

3. The Individual or Director defendants are: G. Richard Wagoner, Jr. ("Wagoner"), John F. Smith, Jr. ("Smith"), Percy N. Barnevik ("Barnevik"), John H. Bryan ("Bryan"), Armando M. Codina ("Codina"), George M.C. Fisher ("Fisher"), E. Stanley O'Neal ("O'Neal"), Echard Pfeiffer ("Pfeiffer"), Alan G. Lafley ("Lafley"), Karen Katen ("Katen"),

The Plaintiffs were at all relevant times holders of GM's Class H Common Stock ("GMH"), which was a "tracking stock" representing the financial performance of Hughes while Hughes was wholly-owned by GM.

The Court of Chancery granted the motions to dismiss brought by GM and the Director defendants.[4] The Court of Chancery held that the revised Complaint, as amended, fails to state a claim upon which relief can be granted as to GM and the Director defendants. The Court of Chancery also granted TNCL's motion to dismiss for the same reason. At the same time, however, the Court of Chancery denied TNCL's motion to dismiss for lack of personal jurisdiction and improper service of process.

### Challenged Transactions [5]

The split-off of Hughes was accomplished in a series of transactions and announced to the public for the first time on April 9, 2003. Five days before the announcement, GM, as the 100% shareholder, caused Hughes to amend its certificate of incorporation to increase the number of authorized shares of Hughes common stock and Hughes Class B common stock from 1 million shares to 2.5 billion shares.[6] Several other amendments were also made, e.g., an "excess shares" provision was added to the certificate of incorporation and Hughes' board of directors was staggered.[7]

Just before the split-off of Hughes was accomplished, Hughes paid a special dividend to its sole shareholder, GM, of $275 million in cash.[8] The split-off occurred by GM's redemption of each GMH share in exchange for one share of Hughes' common stock, shares which Hughes had previously issued to GM.[9] GM sold its economic interest in Hughes to TNCL in the form of Hughes Class B common stock.[10] GM received a combination of cash ($3.1 billion) and stock (28.6 million News Corp. Preferred American Depository Shares ("News ADSs")) from TNCL.[11] The News ADSs were valued at approximately $1.0 billion, bringing the total compensation from TNCL to GM to $4.1 billion.[12] Including the $275 million dividend, GM received a total of $4.375 billion in compensation for divesting itself of Hughes, with $3.375 billion of that amount in cash.[13]

Immediately following the foregoing transactions, TNCL acquired an additional interest in Hughes via the merger of a subsidiary of TNCL into Hughes (the "Merger"), leaving TNCL with approximately a 34% interest in Hughes.[14] The

Philip A. Laskaway ("Laskaway"), Nobuyki Idei ("Idei"), and Lloyd D. Ward ("Ward").

**4.** This brief summary is taken from the Court of Chancery's opinion. *In re General Motors S'holder Litig.*, 2005 WL 1089021 (Del.Ch. May 4, 2005).

**5.** Compl. ¶ 2.

**6.** *Id.* at ¶ 4.

**7.** *Id.*

**8.** *Id.* ¶¶ 6, 66–89.

**9.** According to the Complaint, GM voted those 1.4 billion Hughes shares in favor of the

merger between Hughes and the TNCL subsidiary before distributing them to the GMH shareholders. *Id.* 117, 13.

**10.** *Id.* ¶ 18.

**11.** *Id.*

**12.** *Id.*

**13.** *Id.* ¶ 12.

**14.** Via the merger, TNCL exchanged News ADSs for 17.5% of the Hughes common stock held by the former GMH shareholders. *Id.* ¶¶ 9–10.

former GMH shareholders therefore received a combination of Hughes common stock and News ADSs in exchange for their GMH shares.[15] TNCL later transferred its interest in Hughes to another subsidiary of TNCL, Fox Entertainment.[16]

### Revised Amended Complaint

The operative complaint in this action is the Revised Amended Consolidated Class Action Complaint ("Complaint"), filed on May 7, 2004. It is ninety-seven pages long and, with more than 200 paragraphs, alleges seven claims. All of the claims except for Count VII are alleged against GM and the Director defendants. Count I is for breach of the duty of loyalty and unjust enrichment in the payment of the special dividend. Count II is for breach of the duty of loyalty in failing to deal fairly with the GMH shareholders and compensate them fairly in the transactions. Count III is for breach of the duty of loyalty in manipulating the shareholder vote. Count IV is for breach of the duty of disclosure. Count V is for breach of GM's Restated Certificate of Incorporation, Article Seventh. Count VI is for breach of GM's Restated Certificate of Incorporation, Article Fourth. Count VII is alleged against TNCL for aiding and abetting a breach of fiduciary duty by GM and the Director defendants.

### Plaintiffs' Contentions

In this proceeding, the Court of Chancery held that the effect of shareholder ratification was to maintain the business judgment rule's presumptions.[17] According to the Plaintiffs, the "lynchpin of the Court of Chancery's opinion dismissing all claims was stockholder ratification." The

Plaintiffs argue that the Court of Chancery committed numerous errors in granting dismissal based on ratification, including (i) relying on facts outside of the Complaint, (ii) accepting a manipulated, uninformed vote by interested stockholders, (iii) ignoring claims against GM for breach of fiduciary duty and unjust enrichment, (iv) dismissing duty of loyalty claims based on ratification and (v) failing to apply the two-thirds vote requirement of Article Seventh of GM's Certification of Incorporation. According to the Plaintiffs, the Court of Chancery also misapplied the motion to dismiss standards in considering plaintiffs' claims against TNCL. We have concluded that none of the Plaintiffs' arguments are meritorious.

### TNCL's Cross–Appeal

TNCL cross-appeals from the Court of Chancery's May 4, 2005 decision denying its motion to dismiss the Amended Complaint for lack of personal jurisdiction and improper service. The Court of Chancery denied TNCL's motion to dismiss the Amended Complaint for lack of personal jurisdiction and improper service pursuant to Court of Chancery Rules 12(b)(2) and 12(b)(4). TNCL argues that this Court should affirm the Court of Chancery's decision to dismiss the Amended Complaint pursuant to Rule 12(b)(6); or, in the alternative, this Court should reverse the Court of Chancery's decision to deny TNCL's motion to dismiss pursuant to Rules 12(b)(2) and 12(b)(4). We have concluded that TNCL's Rule 12(b)(6) motion to dismiss was properly granted. Therefore, we do not reach the merits of its cross-appeal.

### Standard of Review

■ This Court reviews *de novo* the dismissal of a complaint pursuant to Rule

---

**15.** *Id.* ¶ 11.

**16.** *Id.* ¶ 10.

**17.** *See also Solomon v. Armstrong*, 747 A.2d 1098, 1124 (Del.Ch.1999); *In re GM Class H S'holders Litig.*, 734 A.2d 611, 616 (Del.Ch. 1999).

12(b)(6).[18] This Court recently summarized the criteria applicable to a Rule 12(b)(6) motion:

> The standards governing a motion to dismiss for failure to state a claim are well settled: (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[19]

In deciding a motion to dismiss under Rule 12(b)(6), a trial court must accept as true all of the well-pleaded allegations of fact and draw reasonable inferences in the plaintiff's favor.[20] A trial court is not, however, required to accept as true conclusory allegations "without specific supporting factual allegations."[21] Moreover, a trial court is required to accept only those "reasonable inferences that logically flow from the face of the complaint" and "is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[22] We hold that the Court of Chancery properly applied these standards in granting all of the defendants' Rule 12(b)(6) motions to dismiss.

### Matters Outside Complaint

The Plaintiffs argue that the Court of Chancery committed legal error because it relied on matters outside of the Complaint in granting all of the defendants' motions to dismiss. The complaint generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss.[23] When the trial court considers matters outside of the complaint, a motion to dismiss is usually converted into a motion for summary judgment and the parties are permitted to expand the record.[24] Chancery Rule 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Accordingly, if a party presents documents in support of its Rule 12(b)(6) motion to dismiss and the trial court considers the documents, it generally must treat the motion as one for summary judgment.[25] "Before a motion for summary judgment is ripe for decision, the non-movant normally

---

18. *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del.2001).

19. *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del.2002) (footnotes omitted).

20. *Malpiede v. Townson*, 780 A.2d at 1082.

21. *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del.1995); *see also Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del.1996).

22. *Malpiede v. Townson*, 780 A.2d at 1083.

23. *Malpiede v. Townson*, 780 A.2d 1075, 1082 (Del.2001); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65 (Del.1995); *In re Tri–Star Pictures, Inc.*, 634 A.2d 319, 326 (Del.1993).

24. *Malpiede v. Townson*, 780 A.2d at 1090.

25. *Id.*; *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 68–69; *In re Tri–Star Pictures, Inc.*, 634 A.2d 319, 326 (Del.1993).

should have an opportunity for some discovery." [26]

■ Nevertheless, in some instances and for carefully limited purposes, it may be proper for a trial court to decide a motion to dismiss by considering documents referred to in a complaint.[27] The trial court may also take judicial notice of matters that are not subject to reasonable dispute.[28] In this case, the Defendant directors submit that the Court of Chancery's decision properly rested on: the insufficiency of the allegations in the Complaint; the entire contents of the Consent Solicitation alleged in the Complaint to be materially misleading; and facts subject to judicial notice. We have concluded that the Court of Chancery properly applied this Court's prior "motion to dismiss" precedents in considering matters outside of the Complaint.[29]

### Entire Consent Solicitation

■ The Complaint challenged the adequacy of disclosures to GM's stockholders in the Consent Solicitation. When a complaint partially quotes or characterizes what a disclosure document says, a defendant is entitled to show the trial court the actual language or the complete context in which it was used.[30] Similarly, where a complaint alleges the omission of some material fact, a defendant is entitled to show that the disclosure was made in the document.[31] Therefore, the Court of Chancery properly considered the entire contents of the Consent Solicitation in determining whether the allegations in the Complaint stated a claim that the document was materially misleading.[32] The Court of Chancery was not obligated to accept as true allegations that misstated or mischaracterized the entire Consent Solicitation.[33]

■ It is well established that "a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[34] "Without the ability to consider the document at issue in its entirety, 'complaints that quoted only selected and misleading portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be

26. *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d at 69; *Malpiede v. Townson,* 780 A.2d at 1090. *See* Ch. Ct. R. 56(e); *Mann v. Oppenheimer & Co.,* 517 A.2d 1056, 1060 (Del.1986).

27. *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d at 69.

28. Delaware Rule of Evidence 201(b) provides: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

29. *See, e.g., Malpiede v. Townson,* 780 A.2d 1075 (Del.2001); *Brehm v. Eisner,* 746 A.2d 244 (Del.2000); *McMullin v. Beran,* 765 A.2d 910 (Del.2000); *Solomon v. Armstrong,* 747

A.2d 1098 (Del.Ch.1999); *Loudon v. Archer–Daniels–Midland Co.,* 700 A.2d 135 (Del. 1997); *Solomon v. Pathe Commc'ns Corp.,* 672 A.2d 35 (Del.1996); *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59 (Del.1995).

30. *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59, 69–70 (Del.1995).

31. *Malpiede v. Townson,* 780 A.2d 1075, 1091–92 (Del.2001); *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59 (Del.1995).

32. *See, e.g., In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d at 69–70.

33. *Malpiede v. Townson,* 780 A.2d 1075 (Del. 2001); *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59 (Del.1995).

34. *Malpiede v. Townson,* 780 A.2d at 1083.

doomed to failure.' "[35] The Court of Chancery properly applied these standards when it considered the entire Consent Solicitation in this proceeding.[36]

## Judicial Notice Proper

■ In deciding a motion to dismiss, the Court of Chancery acknowledged that it is generally limited to the factual allegations contained in the Complaint.[37] The Court of Chancery concluded, however, that it was entitled to take judicial notice of "publicly available facts that show that both classes of GM stockholders voted to approve the Hughes Transactions." Those "publicly available facts" consist of GM's statements in a Form 10–Q that it filed with the Securities and Exchange Commission ("SEC"), asserting what GM claimed were the results of the vote.[38] In reaching that conclusion, the Court of Chancery stated:

> Because there are no allegations in the Complaint that challenge whether the conditions necessary to consummate the transaction were actually met, (i.e., a majority vote of holders of each class of GM stock), those facts are not subject to reasonable dispute and it is appropriate

to take judicial notice of the voting percentages of each class of GM stock.

This Court has recognized that, in acting on a Rule 12(b)(6) motion to dismiss, trial courts may consider hearsay in SEC filings "to ascertain facts appropriate for judicial notice under [Delaware Rule of Evidence] 201."[39] The Court of Chancery recognized, however, that it could only take judicial notice of facts "*not* subject to reasonable dispute."[40] According to the Plaintiffs, the results of the vote are "subject to reasonable dispute" because GM relies solely on its own "self-serving 10–Q" regarding the vote.

■ The Plaintiffs' argument that there was a "reasonable dispute" about the shareholder vote is contradicted by the Complaint. The Complaint acknowledges that GM could not close the transactions unless it obtained the required approvals by a majority vote of holders of each class of GM stock. The Complaint alleges that the transactions, which were conditioned on those majority approvals, actually closed on December 22, 2003. Consequently, the relevant allegations in the

**35.** *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 70 (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991)).

**36.** *Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001); *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59 (Del.1995).

**37.** *McMullin v. Beran*, 765 A.2d 910, 916 (Del.2000).

**38.** On October 3, 2003, the holders of a majority of both GM and GMH stock voted overwhelmingly to approve and ratify the Hughes Transactions. *See* GM SEC Form 10–Q, filed 11/13/03. Specifically, 77% of the GMH stockholders voted to ratify the new Hughes certificate of incorporation, including the "excess stock" and staggered board provisions that TNCL had negotiated for, as compared to the 2% that responded to the Consent Solici-

tation by voting against the transaction or abstaining. *Id.* In addition, 77.1% of the GMH stockholders voted to ratify the Split–Off, including the $275 million Special Dividend, as compared to the 1.9% that responded to the Consent Solicitation by voting against the transaction or abstaining. *Id.* Moreover, 75.5% of the GMH stockholders voted to ratify the Stock Purchase and the Merger, as compared to the 3.5% that responded to the Consent Solicitation by voting against the transaction or abstaining. *Id.* On December 22, 2003, the Hughes Transactions closed.

**39.** *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 70 n. 9 (Del.1995).

**40.** D.R.E. 201 (emphasis added); *see also In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 70.

Complaint were a three-fold attack that assumed the majority votes had been cast in favor of the transactions: first, that the majority votes were uninformed; second, that the majority votes were manipulated; and third, that a supermajority vote rather than a majority vote was actually required.

The record supports the Court of Chancery's determination that there are no allegations in the Complaint that challenge "whether the conditions necessary to consummate the transaction were actually met (i.e., a majority vote of holders of each class of GM stock)." Moreover, at the oral argument in the Court of Chancery, the Plaintiffs' counsel stated that they "have no reason to dispute that [defendants'] disclosures regarding their vote totals are correct." Under these two circumstances, it was proper for the Court of Chancery to take judicial notice of the publicly available fact, reported by GM in a Form 10–Q filed with the SEC, that a majority of both classes of GM stockholders voted to approve the Hughes transactions.[41]

### Discovery Properly Denied

In this Court, in a footnote, the Plaintiffs assert they could not contest that a majority of both classes of GM shareholders approved the transaction because they were "denied discovery regarding the vote." This Court has frequently stated that plaintiffs must use the "tools at hand" to develop the necessary facts for pleading purposes.[42] In this case, in a letter to the Plaintiffs' attorney, the Court of Chancery noted it had little regard for the Plaintiffs' discovery requests when "they seemed either unable or simply unwilling to use even the most basic means of gathering publicly available information." We quote that letter in its entirety because it reflects the Court of Chancery's concerns about the Plaintiffs' initial efforts to enjoin a "proposed transaction" that had already closed:

Dear [Plaintiffs' counsel]:

I am concerned with the proposed amended complaint. Since the filing of the original complaint in this action, several events relating to this dispute have transpired. First, shareholders appear to have approved the deal. Second, the FCC approved the transaction subject to known conditions. Third, the transaction was consummated. Reading the amended complaint, however, gives one the clear impression that this deal has not closed. In fact, the amended complaint rather bizarrely requests this Court to enjoin the "proposed transaction."

While plaintiffs' reservations regarding the consent solicitation and record date are duly noted, I cannot fathom how other facts could be the subject of dispute. For example, plaintiffs feign ignorance of the FCC's approval of the Hughes transaction in their reply brief of January 28, 2004, when after only seconds of [I]nternet research I was able to ascertain those conditions. The FCC provided public notice of its conditioned approval on December 19, 2003. On the same web page where the FCC's conditions are provided, there is a notice of "consummation" filed by GM on December 23, 2003.

You stated in a letter to opposing counsel that you were, as of December 30, 2003 (when plaintiffs moved to amend the complaint), "frankly unaware

---

41. *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d at 70 n. 9. *See also Solomon v. Armstrong*, 747 A.2d 1098, 1109, 1110 n. 20 (Del.Ch.1999); *In re GM Class H S'holders Litig.*, 734 A.2d 611, 615 (Del.Ch.1999).

42. *Brehm v. Eisner*, 746 A.2d 244, 266 (Del. 2000).

that the transactions had closed." I assume, however, that plaintiffs are now aware of the salient facts. Given this newfound knowledge, is there any good-faith basis for continuing to ignore the fact that this deal has been consummated? How is the integrity of the judicial process enhanced by proceeding with a complaint that is misleading?

■ The Plaintiffs did not provide the Court of Chancery, and. have not provided this Court, with any good faith basis for questioning the vote totals reported by GM in a Form Q–10 filed with the SEC. In *Malpiede v. Townson,* this Court noted that a party may be entitled to discovery when the trial court considers a matter outside of the complaint in ruling on a motion to dismiss and that motion to dismiss will be converted into a motion for summary judgment by "clear force of the pleading rules."[43] However, where a plaintiff has no good faith basis for challenging the authenticity or legitimacy of an extraneous fact, *that is otherwise subject to judicial notice,*[44] the trial court may properly consider such fact in ruling on a motion to dismiss without affording the plaintiff an opportunity to take discovery.

### Complaint Properly Dismissed

We have concluded that the Court of Chancery properly considered the Consent Solicitation in its entirety and properly took judicial notice of the shareholder votes. We have concluded that the Plaintiffs' discovery request was properly denied. We have also concluded that the Court of Chancery then properly applied well-settled principles of Delaware law to the facts that were properly before it when it decided the other substantive issues that the Plaintiffs challenge in this appeal. Accordingly, we have determined that the final judgments of the Court of Chancery should be affirmed on the basis of and for the reasons assigned by the Court of Chancery in its well-reasoned decision dated May 4, 2005.[45]

### Conclusion

The final judgments of the Court of Chancery, that granted all of the defendants' Rule 12(b)(6) motions to dismiss, are affirmed.

---

43. *Malpiede v. Townson,* 780 A.2d 1075, 1091–92 (Del.2001).

44. *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59, 70 n. 9 (Del.1995).

45. *In re General Motors S'holder Litig.,* 2005 WL 1089021 (Del.Ch. May 4, 2005).