# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

PIETRO CAMPANELLA, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

S. KENT ROCKWELL, JOHN HARTNER, JOHN IRVIN, GREGORY F. PASHKE, WILLIAM F. STROME, ROGER W. THILTGEN, BONNIE K. WACHTEL, PAUL A. CAMUTI, LORETTA L. BENEC, and DESKTOP METAL INC.,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2021-1013-LWW

## MEMORANDUM OPINION

Date Submitted: November 26, 2024
Date Decided: February 18, 2025

Ryan M. Ernst, BIELLI & KLAUDER, LLC, Wilmington, Delaware; Guri Ademi & Jesse Fruchter, ADEMI LLP, Cudahy, Wisconsin; *Counsel for Plaintiff Pietro Campanella*

Raymond J. DiCamillo, Brock E. Czeschin, Kevin M. Gallagher & Elizabeth J. Freud, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Blair Connelly, LATHAM & WATKINS LLP, New York, New York; Kristin N. Murphy & Jordan D. Cook, LATHAM & WATKINS LLP, Costa Mesa, California; *Counsel for Defendants S. Kent Rockwell, John Hartner, John Irvin, Gregory F. Pashke, William F. Strome, Roger W. Thiltgen, Bonnie K. Wachtel, Paul A. Camuti, Loretta L. Benec, and Desktop Metal Inc.*

**WILL, Vice Chancellor**

This lawsuit challenges an arms' length, third-party merger between two 3D printing companies. In 2021, Desktop Metal, Inc. acquired The ExOne Company for a mix of cash and Desktop Metal stock at a 47% premium to market. The ExOne board was concededly disinterested and independent, and no controlling stockholder was involved. A majority of ExOne's stockholders voted in favor of the merger.

Despite these facts, an ExOne stockholder sued the board for breach of fiduciary duty. He claims that the board should have postponed the stockholder vote on the merger to conduct additional diligence and make supplemental disclosures about two issues. The first issue is a discrete FDA-compliance matter affecting a single product line at one of Desktop Metal's subsidiaries, which Desktop Metal announced it was investigating just before the ExOne stockholder vote. The second issue is the resignation of the subsidiary's CEO (also a member of Desktop Metal's board), which Desktop Metal disclosed at the same time.

It seems unlikely that these issues would have been material to Desktop Metal's stockholders. In fact, Desktop Metal told the market that it did not expect them to have any material effect on its financial statements. It is even less conceivable that they would have been important to ExOne's stockholders deciding whether to accept the merger consideration from Desktop Metal.

Because the plaintiff fails to demonstrate otherwise, the business judgment rule applies under *Corwin*. This case is dismissed.

1

## I. FACTUAL BACKGROUND

The following facts are drawn from the operative complaint, documents it incorporates by reference, and matters subject to judicial notice.[1]

### A. Desktop Metal's Preliminary Outreach to ExOne

Before the merger at issue in this case, The ExOne Company was a publicly traded Delaware corporation headquartered in Pennsylvania.[2] It manufactured and sold 3D printing machines and printing products to specification for its customers.[3]

Starting in June 2020, ExOne and Desktop Metal, Inc. began to discuss potential business opportunities.[4] Desktop Metal was then a private Delaware

---

[1] Verified First Am. Class Action Compl. (Dkt. 32) ("Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint; this is true even where the documents are not expressly incorporated into or attached to the complaint."); *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013); *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 170-71 (Del. 2006).

Exhibits to the Transmittal Affidavit of Elizabeth J. Freud, Esq. in Support of Defendants' Opening Brief in Support of Their Motion to Dismiss (Dkt. 41) and Transmittal of Elizabeth J. Freund, Esq. in Support of Defendants' Reply Brief in Support of Their Motion to Dismiss (Dkt. 48) are cited as "Defs.' Ex. __." Exhibits to the Transmittal Affidavit of Ryan M. Ernst, Esq. in Support of Plaintiff's Answering Brief (Dkt. 44) are cited as "Pl.'s Ex. __."

[2] Compl. ¶ 40.

[3] *Id.*

[4] Defs.' Ex. 2 (Excerpt, Desktop Metal's Am. Form S-4, filed with the Securities and Exchange Commission (SEC) on Oct. 7, 2021 ("Registration Statement")) 176. The Registration Statement is incorporated by reference into the complaint. *See* Compl. ¶ 4.

corporation headquartered in Massachusetts.[5]  Like ExOne, Desktop Metal designed

and marketed 3D printing systems.[6]  ExOne continued to have discussions with

Desktop Metal and other third parties through the summer of 2020 and into 2021.[7]

In December 2021, Desktop Metal went public through a de-SPAC

transaction.  It began trading on the New York Stock Exchange under the ticker

symbol "DM."[8]  Desktop Metal grew at an impressive pace, including through

strategic acquisitions.[9]  It was "considered one of the fastest growing 'unicorn'

companies in history."[10]

## B.     The EnvisionTEC Acquisition

Two months after going public, on February 16, 2021, Desktop Metal

acquired EnvisionTEC US LLC—another provider of 3D printing solutions.[11]

Desktop Metal paid slightly over $300 million for EnvisionTEC,[12]  which amounted

---

[5] Compl. ¶ 34.

[6] *Id.*; *see* Defs.' Ex. 1 (Desktop Metal Form 10-K, filed with the SEC on March 15, 2021 ("Desktop Metal 2020 10-K")) 3.  This Form 10-K is incorporated by reference into the Complaint.  *See* Compl. ¶ 46.

[7] Registration Statement 80.

[8] Compl. ¶ 34.

[9] *Id.*

[10] *Id.*

[11] *Id.* ¶¶ 36, 44; *see* Defs.' Ex. 3 (Desktop Metal Form 8-K, filed with the SEC on Feb. 17, 2021 ("Desktop Metal Feb. 2021 8-K")) 3.

[12] *See* Registration Statement 176 (explaining that the consideration paid consisted of $148.3 million in cash and $159.8 million in Desktop Metal stock); Compl. ¶ 9 n.1.

to a small percentage of Desktop Metal's market cap.[13] EnvisionTEC's founder, Ali El-Siblani, remained CEO of the subsidiary after closing and joined Desktop Metal's Board of Directors.[14]

EnvisionTEC became a wholly owned subsidiary of Desktop Metal.[15] In its annual financial statement for 2020, Desktop Metal said that it expected EnvisionTEC to support the creation of a "comprehensive portfolio across metals, polymers, and composites and grow distribution channels both in quantity and through the addition of a vertically focused channel."[16] Desktop Metal also anticipated that EnvisionTEC would contribute significantly to its 2021 revenues.[17]

---

[13] As of February 16, 2021, Desktop Metal had 27,497,500 outstanding shares, each of which traded at $317.40, for a total market capitalization of $8,727,706,500. *See* Registration Statement 80; Yahoo! Finance, Desktop Metal, Inc. (DM), https://finance.yahoo.com/quote/DM/history/?period1=1581552512&period2=17394053 02 (last visited Feb. 14, 2025); *see also Lee v. Pincus*, 2014 WL 6066108, at *4 n.11 (Del. Ch. Nov. 14, 2014) (explaining that the court may take judicial notice of stock prices on a motion to dismiss "because they are not subject to reasonable dispute"). The $303,600,000 purchase price for EnvisionTEC thus constituted approximately 3.48% of Desktop Metal's total market capitalization.

[14] Compl. ¶ 36.

[15] Desktop Metal Feb. 2021 8-K at 3.

[16] Compl. ¶ 46 (quoting Desktop Metal 2020 10-K at 36).

[17] *Id.* ¶ 47; *see also infra* note 98 and accompanying text.

At this point, Desktop Metal had approximately eleven other subsidiaries around the world.[18] Its products were distributed in over sixty countries.[19] And its intellectual property included hundreds of patents and pending patent applications.[20]

### C.    The ExOne Acquisition

In May 2021, Desktop Metal sent a non-binding proposal to acquire ExOne for consideration worth $27.50 per share consisting of cash and Desktop Metal stock.[21] ExOne rejected Desktop Metal's request for exclusivity and continued to explore potential transactions with both Desktop Metal and another potential counterparty.[22]

By July, the other party had fallen out of the process.[23] ExOne and Desktop Metal began to exchange draft merger agreements.[24] While negotiations ensued, the stock prices of both companies fell precipitously amid larger market pressures.[25] In

---

[18] Desktop Metal 2020 10-K at Ex. 21.1.

[19] *Id.* at 16.

[20] *Id.*

[21] Registration Statement 81.

[22] *Id.* at 82-84.

[23] *Id.* at 85.

[24] *Id.* at 84-85.

[25] *Id.* at 85.

the six weeks between June 18 and August 2, 2021, ExOne's stock price declined nearly 18% and Desktop Metal's declined almost 30%.[26]

On August 3, Desktop Metal presented an offer to acquire all of ExOne's outstanding shares for a fixed exchange ratio of 1.9981 shares of Desktop Metal Class A common stock per share of ExOne common stock and $175 million in aggregate cash ($7.82 per share) with a 10% bilateral collar.[27] If Desktop Metal's stock price fell within the collar, the proposed $25.50 per share of consideration would represent a 55% premium to ExOne's then-current stock price.[28]

ExOne returned a counterproposal with the same $25.50 per share purchase price that increased the cash component to $190 million ($8.50 per share) with an exchange ratio of 1.9274x and a 10% bilateral collar.[29] Desktop Metal accepted this counterproposal.[30]

### D. The Merger Announcement

On August 11, 2021, Desktop Metal and ExOne signed a final merger agreement.[31] The same day, the parties announced that Desktop Metal would

---

[26] *See id.*; *see also* Defs.' Ex. 4 (chart of ExOne's stock price); *see supra* note 13 (citing *Lee*, 2014 WL 6066108, at *4 n.11).

[27] Registration Statement 85.

[28] *Id.* at 86.

[29] *Id.*

[30] *Id.*; *see* Compl. ¶ 49.

[31] Registration Statement 87; *see* Compl. ¶ 49.

acquire all issued and outstanding ExOne shares.[32] The implied consideration reflected a 47.6% premium for ExOne stockholders based on the last trading day before the merger was announced.[33] The merger agreement also provided for an adjustment mechanism based on Desktop Metal's stock price before closing.[34]

### E. The Investigation and Resignation

On October 8, ExOne filed its final proxy statement.[35] It set a special meeting for ExOne stockholders to vote on the merger on November 9.[36]

On the eve of the special meeting, after the market closed on November 8, Desktop Metal disclosed that the Audit Committee of its board had recently launched an internal investigation (the "Investigation").[37] The Investigation was prompted by a whistleblower complaint related to "manufacturing and product compliance practices and procedures with respect to a subset of [the] photopolymer equipment and materials" at the EnvisionTEC's facility in Dearborn, Michigan.[38] Desktop Metal stated that it had already "taken initial actions, including implementing

---

[32] Compl. ¶ 49 (quoting press release).

[33] *Id.*; *see* Registration Statement 87.

[34] *See* Registration Statement 29.

[35] Compl. ¶ 6.

[36] *Id.* ¶¶ 6, 65.

[37] *Id.* ¶¶ 9-10.

[38] *Id.* ¶ 9; *see* Pl.'s Ex. 2 (Desktop Metal Form 8-K (I), filed with the SEC on Nov. 8, 2021 ("Desktop Metal First Nov. 2021 8-K")).

changes in the management of and procedures associated with manufacturing the applicable products."[39] It also explained that, "[b]ased on the investigation to date, [it] did not believe the matters involved w[ould] have a material impact on . . . [Desktop Metal's] financial statements or its business."[40]

Desktop Metal separately disclosed that El-Siblani intended to resign from his role as CEO of EnvisionTEC and as a director of Desktop Metal.[41] It explained that El-Siblani's "decision . . . was not the result of any disagreement relating to [Desktop Metal's] operations, policies or practices."[42]

On November 9, ExOne's Board of Directors met to discuss the Investigation and El-Siblani's resignation.[43] The board discussed with counsel "the impact of these events on the special meeting of stockholders . . . scheduled for later in the morning."[44] It determined to proceed with the special meeting as scheduled.[45]

---

[39] Desktop Metal First Nov. 2021 8-K at 1; *see* Compl. ¶ 9.

[40] Desktop Metal First Nov. 2021 8-K at 1.

[41] Compl. ¶ 10; *see* Pl.'s Ex. 3 (Desktop Metal Form 8-K (II), filed with the SEC on Nov. 8, 2021 ("Desktop Metal Second Nov. 2021 8-K")).

[42] Desktop Metal Second Nov. 2021 8-K at 1.

[43] Compl. ¶ 81 (quoting Nov. 9, 2021 ExOne Board minutes). Campanella obtained these minutes through a separate books and records action that was resolved. *Id.* ¶ 81 n.3; *see infra* notes 70-75 and accompanying text.

[44] Compl. ¶ 81 (quoting Nov. 9, 2021 ExOne board minutes).

[45] *Id.* ¶¶ 81-82, 87.

## F. The Special Meeting and Closing

On November 9, ExOne stockholders met to vote on whether to approve the merger with Desktop Metal. Many stockholders had already submitted proxies.[46]

The next day, ExOne announced that approximately 66.5% of its outstanding shares of common stock had voted to adopt the merger agreement and approve the merger.[47] ExOne subsequently announced its intent to consummate the transaction "within three business days."[48]

The merger closed on November 12. ExOne became a wholly owned subsidiary of Desktop Metal.[49]

## G. Campanella's First Lawsuit

By this point, ExOne stockholder Pietro Campanella—the plaintiff in this action—had filed a lawsuit in the United States District Court for the Western District of Pennsylvania.[50] His complaint, filed on September 29, 2021, was based on the preliminary proxy statement ExOne had filed two weeks earlier.[51] It was one

---

[46] *Id.* ¶ 98.

[47] *Id.*; *see* Defs.' Ex. 6 (Desktop Metal Form 8-K, filed with the SEC on Nov. 21, 2021) (disclosing that 66.9% of ExOne shares were voted and 99.41% of those shares voted in favor of the merger, representing 66.5% of the 22,361,254 shares of ExOne common stock outstanding and entitled to vote).

[48] Compl. ¶¶ 98, 100.

[49] *Id.* ¶ 101.

[50] *See id.* ¶ 5.

[51] *See id.* ¶¶ 4-5.

of twelve complaints challenging the merger and associated disclosures that were filed in various federal courts.[52] Desktop Metal issued supplemental disclosures which mooted certain of the disclosure claims.[53]

On November 10—two days after Desktop Metal announced the Investigation—Campanella filed an amended complaint and a motion seeking to enjoin the closing of the merger.[54] He withdrew his motion two days later, on November 12.[55]

## H.    The Investigation's Completion

After market close on November 15, 2021, Desktop Metal filed a quarterly report that addressed the Investigation.[56] It announced that the Investigation had identified compliance issues with certain shipments of a dental resin called Flexcera that originated from EnvisionTEC's Dearborn facility and with EnvisionTEC's PCA

---

[52] *See* Defs.' Ex. 8 (Excerpt, Desktop Metal's Form 10-K for the fiscal year ended Dec. 31, 2021, filed with the SEC on Mar. 15, 2022 ("Desktop Metal 2021 10-K")); *see also Solomon v. Armstrong*, 747 A.2d 1098, 1121 n.72 (Del. Ch. 1999) ("[I]t is well settled that where certain facts are not specifically alleged (or in dispute) a Court may take judicial notice of facts publicly available in filings with the SEC."), *aff'd*, 746 A.2d 277 (Del. 2000) (TABLE).

[53] *See* Compl. ¶¶ 7-8.

[54] *Id.* ¶ 15.

[55] *Id.* ¶ 101; *see* Defs.' Ex. 9 (Notice of Withdrawal of Mot. for Prelim. Inj.); *see also Hamilton P'rs, L.P. v. Englard*, 11 A.3d 1180, 1188 (Del. Ch. 2010) (taking judicial notice of court filings from prior lawsuits).

[56] Compl. ¶ 102; *see also* Defs.' Ex. 10 (Excerpt, Desktop Metal Form 10-Q for the period ended Sept. 30, 2021, filed with the SEC on Nov. 15, 2021 ("Desktop Metal 3Q 2021 10-Q")). This Form 10-Q is incorporated by reference into the Complaint. Compl. ¶ 102.

4000 curing box.[57]  Desktop Metal explained that it would notify and "consult with [the FDA] on the appropriate voluntary market action with respect to these products."[58]

In the same quarterly disclosure, Desktop Metal also said that it did "not expect the costs of any such market action to have a material impact on its financial statements."[59]  It subsequently confirmed this assessment in its annual report, disclosing that the "matters subject to the [Investigation] and [its] responsive actions did not have, and are not anticipated to have, a material impact on [the company's] financial statements or business."[60]

Desktop Metal's stock price closed at $6.83 on November 16—a reduction of about 25% from market close on November 8.[61]

## I.    The Massachusetts Litigation

Starting in December 2021, four Desktop Metal stockholders filed securities class action complaints in the United States District Court for the District of Massachusetts.[62]  The stockholders alleged that Desktop Metal and certain of its

---

[57] Desktop Metal 3Q 2021 10-Q at 43.

[58] Compl. ¶ 102.

[59] *Id.*

[60] Desktop Metal 2021 10-K at 18; *see also Solomon,* 747 A.2d at 1121 n.72.

[61] Compl. ¶¶ 102-03.

[62] Desktop Metal 2021 10-K at 48.

officers made false or misleading statements about EnvisionTEC's manufacturing and product compliance practices and procedures.[63]

The consolidated action was dismissed with prejudice by the federal court on September 20, 2023.[64] The court observed that the claims centered "on a small fraction of one product being manufactured in a non-compliant manner" since non-FDA compliant Flexcera resin comprised just 10% of the total Flexcera resin sales from April to October 2021.[65] The court held that the plaintiffs' allegations were "insufficient to show that Flexcera and/or the PCA 4000 was central to Desktop Metal's core survival."[66]

On October 28, 2024, the United States Court of Appeals for the First Circuit affirmed the district court's dismissal of the securities action.[67] The First Circuit held that the plaintiffs did not adequately "make out a claim that Desktop Metal defrauded its investors through material misrepresentations or omissions."[68]

---

[63] *Id.*

[64] *See Luongo v. Desktop Metal, Inc.*, 2023 WL 6142715 (D. Mass. Sep. 20, 2023).

[65] *Id.* at *11.

[66] *Id.* at *13-14.

[67] *Zhou v. Desktop Metal, Inc.*, 120 F.4th 278, 283 (1st Cir. 2024); *see* Dkts. 63-64.

[68] *Zhou*, 120 F.4th at 295-96.

## J.     This Litigation

Ten days after withdrawing his federal preliminary injunction motion, on November 22, 2021, Campanella filed the present action in this court on behalf of himself and a putative class of former ExOne stockholders.[69]  His suit came on the heels of a books and records action filed by Leo Lissog Goldstein—another former ExOne stockholder.[70]

On February 8, 2022, Goldstein moved to intervene and stay this action until his Section 220 suit was resolved.[71]  I granted that unopposed motion.[72]  On July 26, 2023, Goldstein decided not to pursue plenary claims.[73]  The stay was lifted.[74]

Desktop Metal gave Campanella the books and records it had produced to Goldstein.[75]  Campanella then filed the operative Verified First Amended Class Action Complaint (the "Complaint") in this court on October 20, 2023.  The Complaint includes two counts.  Count I is a breach of fiduciary duty claim against the former members of ExOne's board and its former general counsel.[76]  Count II is

---

[69] Dkt. 1.

[70] *See* Desktop Metal 2021 10-K at 48.

[71] Dkt. 13.

[72] Dkt. 16.

[73] Dkt. 24 at 2.

[74] Dkt. 25.

[75] Dkt. 26.

[76] Compl. ¶¶ 111-14.

an aiding and abetting claim against Desktop Metal regarding the alleged deprivation of material information from ExOne stockholders.[77]

On January 12, 2024, the defendants moved to dismiss the Complaint.[78] After briefing was complete, oral argument was held on October 16.[79] The parties subsequently filed letters regarding the First Circuit's decision affirming the dismissal of securities claims against Desktop Metal.[80]

## II. ANALYSIS

The defendants' motion to dismiss is brought under Court of Chancery Rule 12(b)(6). It is governed by the plaintiff-friendly reasonable conceivability standard:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [(iv)] dismissal is inappropriate unless the "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[81]

---

[77] *Id.* ¶¶ 115-17.

[78] Dkt. 39.

[79] Dkts. 58, 62.

[80] Dkts. 63-64.

[81] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (citation omitted).

I "must draw reasonable inferences in favor of the plaintiff" but am "not required to accept every strained interpretation of [his] allegations."[82] Nor must I accept conclusory assertions "unsupported by allegations of specific facts."[83]

The defendants argue that dismissal is warranted under the *Corwin* doctrine.[84] In *Corwin v. KKR Financial Holdings, LLC*, the Delaware Supreme Court confirmed that the business judgment rule applies when a transaction "is approved by a fully informed, uncoerced vote of disinterested stockholders."[85] Delaware courts will not "second-guess the judgment of a disinterested stockholder majority that determines that a transaction with a party other than a controlling stockholder is in their best interests."[86]

The defendants also argue, in the alternative, that Campanella failed to plead a non-exculpated claim against the director defendants or a claim against ExOne's

---

[82] *Gen. Motors (Hughes)*, 897 A.2d at 168 (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

[83] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom. Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000)

[84] Defs.' Opening Br. in Supp. of Their Mot. to Dismiss Pl.'s Verified First Am. Class Action Compl. (Dkt. 40) ("Defs.' Opening Br.") 18-22; *see also* Defs.' Reply Br. in Supp. of Their Mot. to Dismiss Pl.'s Verified Class Action Compl. 5-13.

[85] 125 A.3d 304, 309 (Del. 2015).

[86] *Id.* at 306; *see also In re Volcano Corp. S'holder Litig.*, 143 A.3d 727, 737 & n.16 (Del. Ch. 2016) (explaining that "approval of a merger by a majority of a corporation's outstanding shares pursuant to a statutorily required vote of the corporation's fully informed, uncoerced, disinterested stockholders renders the business judgment rule irrebuttable"), *aff'd*, 156 A.3d 697 (Del. 2017) (TABLE).

15

former general counsel. Because I conclude that *Corwin* compels the application of the business judgment rule, I need not reach this argument. I also dismiss Campanella's aiding and abetting claim against Desktop Metal for lack of a predicate breach.[87] The Complaint is therefore dismissed in its entirety.

## A. The Stockholder Vote Was Fully Informed.

The ExOne stockholder vote was fully informed if ExOne's disclosures "apprised stockholders of all material information and did not materially mislead them."[88] "An omitted fact is material if there is a substantial likelihood that a reasonable stockholder would consider it important in deciding how to vote."[89] That is, a material fact is one that "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[90] At times, a "non-material fact can . . . trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders."[91] But Delaware courts have repeatedly rejected the premise that "increasingly detailed disclosure is always material and beneficial."[92]

---

[87] *See infra* notes 127-128 and accompanying text.

[88] *Morrison v. Berry*, 191 A.3d 268, 282 (Del. 2018) (citing *Appel v. Berkman*, 180 A.3d 1055, 1057 (Del. 2018)).

[89] *Id.* (quoting *Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985)).

[90] *Id.* at 283 (quoting *Getty Oil*, 493 A.2d at 944).

[91] *Id.* (quoting *Zirn v. VLI Corp.*, 681 A.2d 1050, 1056 (Del. 1996)).

[92] *Zirn*, 1995 WL 362616, at *4; *see also Teamster Members Ret. Plan v. Dearth*, 2022 WL 1744436, at *12 (Del. Ch. May 31, 2022) ("A complaint does not state a disclosure

16

At the pleading stage, this court must assess whether a complaint "supports a rational inference that material facts were not disclosed or that the disclosed information was otherwise materially misleading."[93] The plaintiff "must first identify a deficiency in the operative disclosure document."[94] If he succeeds, the burden "fall[s] to [the] defendants to establish that the alleged deficiency fails as a matter of law in order to secure the cleansing effect of the vote" under *Corwin*.[95]

Campanella points to two purportedly material facts occurring after the proxy was filed that he believes obligated ExOne's board to supplement its disclosures and postpone the stockholder vote. The first fact is the Flexcera Investigation and the second is El-Siblani's resignation.[96] Campanella fails to demonstrate that either issue would have been material to a reasonable ExOne stockholder voting on the merger with Desktop Metal.

---

violation by noting picayune lacunae or 'tell-me-more' details left out."), *aff'd*, 2023 WL 125659 (Del. Jan. 9, 2023) (TABLE); *In re Answers Corp. S'holders Litig.*, 2011 WL 1366780 (Del. Ch. Apr. 11, 2011) (finding no need to disclose non-material facts which may "confuse stockholders or inundate them with an overload of information" (citing *Wayne Cnty. Emps.' Ret. Sys. v. Corti*, 954 A.2d 319, 330 (Del. Ch. 2008))); *In re Merge Healthcare Inc.*, 2017 WL 395981, at *9 (Del. Ch. Jan. 30, 2017) (holding that there is no requirement to disclose "redundant facts, insignificant details, or reasonable assumptions").

[93] *Morrison*, 191 A.3d at 282.

[94] *In re Solera Hldgs., Inc. S'holder Litig.*, 2017 WL 57839, at *9 (Del. Ch. Jan. 5, 2017); *see also Morrison*, 191 A.3d at 282 n. 60 (agreeing with the description of the applicable burdens in *Solera*).

[95] *Solera*, 2017 WL 57839, at *9.

[96] Pl.'s Answering Br. 20-28.

## 1. The Flexcera Investigation

Campanella claims that the ExOne stockholder vote was uninformed because the Investigation was not timely disclosed.[97] He notes that Desktop Metal expected EnvisionTEC to "contribute 'roughly' 40% of Desktop Metal's [anticipated total] revenue."[98] Based on Desktop Metal's general expectations for EnvisionTEC, he asserts that a reasonable ExOne stockholder would want to know that "Desktop Metal was already facing potential exposure from the EnvisionTEC acquisition."[99]

The Complaint, however, lacks well-pleaded allegations supporting a reasonable inference that the Investigation would have been important to ExOne's stockholders when voting on the merger. Campanella cites no facts suggesting that EnvisionTEC's Flexcera product—the only product at issue in the Investigation— was material to Desktop Metal's business, let alone to the mixed consideration ExOne stockholders would receive.[100] His contention concerns just one product (Flexcera) in one line (dentistry) of a single subsidiary (EnvisionTEC) of the large company (Desktop Metal) acquiring ExOne.[101]

---

[97] *See* Compl. ¶ 88; Pl.'s Answering Br. 23-28.

[98] Compl. ¶ 47; *see also id.* ¶¶ 44-46 (quoting laudatory statements from Desktop Metal's disclosures about its acquisition of EnvisionTEC).

[99] Pl.'s Answering Br. 24; *see* Compl. ¶ 88.

[100] Campanella mentions Flexcera just twice in his complaint. *See* Compl. ¶¶ 18, 102.

[101] *See supra* note 57 and accompanying text.

Nevertheless, Campanella argues that the existence of the Investigation "imparted a new and significant slant on information" in the proxy, "trigger[ing] a duty to obtain additional diligence and supplement the [disclosures]."[102] More specifically, he asserts that the Investigation "put a new spin" on statements in the proxy about general regulatory compliance and the EnvisionTEC acquisition.[103] But he does not allege that any of these compliance risks came to fruition. Nor could he. Desktop Metal disclosed that it did not believe the Investigation would have any material adverse effect on its business.[104]

Campanella further argues that information about the Investigation was material because it "might lead a reasonable [ExOne] stockholder to conclude that Desktop Metal did not perform adequate diligence before acquiring EnvisionTEC."[105] Yet, the Complaint is silent on the diligence Desktop Metal performed before acquiring EnvisionTEC—a transaction that closed nearly nine months before the ExOne stockholder vote. Campanella only speculates that the Investigation's occurrence after the EnvisionTEC acquisition "might lead" an ExOne stockholder to conclude that Desktop Metal's diligence was deficient, which

---

[102] Pl.'s Answering Br. 20-21 (citation omitted); *see id.* at 24-25 (citing "generalized discussions" about risks in the proxy, including that a "failure to comply with regulations could have an adverse impact on [Desktop Metal's] business").

[103] *Id.* at 19.

[104] *See supra* notes 40, 59-60, and accompanying text.

[105] Pl.'s Answering Br. 26.

19

"could . . . foreshadow other EnvisionTEC compliance problems, or potentially problems with *other* . . . acquisitions."[106]

Campanella also suggests that the Investigation is material because Desktop Metal's stock price declined after it was disclosed.[107] His reasoning is circular: the stock price dropped because material information was announced, and the information was material because the price dropped. But a drop in stock price does not excuse a plaintiff from meeting her burden to identify a disclosure deficiency. Campanella's theory is even shakier since the affected stock price is of a transaction counterparty and the stock of both companies was declining even before the Investigation was announced.[108]

Campanella's allegations rest on a series of conjectural leaps.[109] I cannot rationally infer that because EnvisionTEC was important to Desktop Metal, the Investigation into a subset of shipments of Flexcera over a limited duration would have been material to a reasonable ExOne stockholder voting on the merger.[110]

---

[106] *Id.* (emphasis added).

[107] *Id.* at 27.

[108] *See supra* notes 25-26 and accompanying text.

[109] *E.g.*, *Dent v. Rantrom Int'l Corp.*, 2014 WL 2931180, at *14 (Del. Ch. June 30, 2014) (granting a motion to dismiss where conclusory allegations were insufficient to support a reasonably conceivable claim).

[110] The federal court in Massachusetts reached a similar conclusion. *Luongo*, 2023 WL 6142715, at *11 ("[G]iven that 90% of the Flexcera resin manufactured between the time of the acquisition and the end of the proposed Zhou Class Period fully complied with FDA

20

## 2. El-Siblani's Resignation

Campanella next asserts that El-Siblani's resignation was material information that obligated ExOne's board to postpone the vote and issue supplemental disclosures.[111] He cites no facts supporting a reasonable inference that the departure of El-Siblani—a single member of Desktop Metal's board and the CEO of just one of its subsidiaries—would be material to ExOne stockholders. Instead, Campanella again argues that the information put a "slant" on existing disclosures in the proxy.[112] He puts forward three examples that he believes support his theory.

First, Campanella maintains that the proxy "touted" El-Siblani's involvement at EnvisionTEC and qualifications to serve on Desktop Metal's board.[113] It is unclear why this disclosure would have had any material bearing on Desktop Metal's business—much less on ExOne's stockholder vote. The sole case Campanella relies on, which is from a Florida federal court, concerns the failure to disclose departures

---

regulations, and that the issue was solved without [the] FDA's intervention, it would have been more misleading to assert that the product was not FDA-compliant.").

[111] Pl.'s Answering Br. 21-23.

[112] *Id.* at 20.

[113] *Id.*; *see* Defs.' Ex. 15 (Excerpt, Desktop Metal Form S-4, filed with the SEC on Oct. 7, 2021) 201-02.

of a dozen high-ranking members of management.[114] Nothing remotely that extreme is alleged here.

Second, Campanella asserts that El-Siblani's departure was material information because Desktop Metal had "pervasive contacts and outstanding agreements" with entities El-Siblani controlled.[115] He does not plead what those contacts or agreements were. More critically, he neglects to explain why they made El-Siblani's resignation material to ExOne stockholders.

Third, Campanella views El-Siblani's departure as linked to the Investigation, bolstering the materiality of both events.[116] But the only fact he presents for this belief is Desktop Metal's refusal to answer a question from a reporter about any connection between the two events.[117] This is the sort of "inferential leap" Delaware courts routinely reject.[118] And even if it could be reasonably inferred that the events were connected, Campanella has failed to demonstrate that either event—taken alone or together—had a material effect on Desktop Metal's financials that would have been important to ExOne stockholders.

---

[114] *Gladwin v. Medfield Corp.*, 1975 WL 360, at *6 (M.D. Fla. Jan. 30, 1975) (observing that "[t]he aggregate number and proximate sequence of the[] high-level management personnel changes [was] significant").

[115] Pl.'s Answering Br. 21.

[116] Compl. ¶¶ 69-70.

[117] *Id.* ¶ 70.

[118] *Harcum v. Lovoi*, 2022 WL 29695, at *22 (Del. Ch. Jan. 3, 2022).

22

*          *          *

Campanella has not adequately pleaded that the ExOne stockholder vote was uninformed. His theories rest on conclusory allegations about relatively minor events at Desktop Metal.[119] This is not the sort of information that Delaware courts deem material to stockholders voting on a transaction.[120]

The First Circuit confirmed that the "corporate mismanagement" at EnvisionTEC concerning Flexcera was insufficient to constitute an omission that would have been material to Desktop Metal stockholders.[121] Campanella's theory here is even weaker. He would have me conclude that a compliance issue with a product at Desktop Metal's subsidiary would have been material to *ExOne* stockholders. Nothing in the Complaint supports that strained inference.

---

[119] *See Larkin v. Shah*, 2016 WL 4485447, at *6 (Del. Ch. Aug. 25, 2016) (explaining that the court "need not give weight to conclusory allegations lacking specific factual bases").

[120] *See, e.g.*, *City of Sarasota Firefighters Pension Fund v. Inovalon Hldgs, Inc.*, 319 A.3d 271, 297 (Del. 2024) (holding that cleansing under *MFW* was unavailable where the proxy did not adequately disclose "the nature and extent" of the seller's financial advisors' ongoing and prior work for the acquirer); *City of Dearborn Police and Fire Revised Ret. Sys. v. Brookfield Asset Mgmt., Inc.*, 314 A.3d 1108, 1132-33 (Del. 2024) (holding that it was reasonably conceivable, in the context of a squeeze-out merger, that a special committee's financial advisor's "nearly half a billion-dollar" investment in the controlling stockholder would have been material to a stockholder assessing the advisor's objectivity).

[121] *Zhou*, 120 F.4th at 293.

23

## B.    The Business Judgment Rule Applies.

Campanella does not assert that the merger involved a conflicted controlling stockholder.[122]  He does not argue that the ExOne stockholder vote was coerced. And he has not claimed that the merger constituted corporate waste.[123]

The merger was approved by a majority of ExOne's disinterested stockholders.[124]  That vote was fully informed.[125]  This court therefore defers to ExOne stockholders' voluntary voting decision.  The business judgment rule applies, requiring dismissal of Campanella's breach of fiduciary duty claims.[126]

Campanella's aiding and abetting claim against Desktop Metal must also be dismissed.  A predicate breach of fiduciary duty is a necessary element of an aiding

---

[122] *Larkin*, 2016 WL 4485447, at *10 (concluding that "the only transactions that are subject to entire fairness that cannot be cleansed by proper stockholder approval are those involving a controlling stockholder").

[123] *See In re KKR Fin. Hldgs. LLC S'holder Litig.*, 101 A.3d 980, 1001 (Del. Ch. 2014) (explaining that the "legal effect of a fully informed stockholder vote of a transaction with a non-controlling stockholder is that the business judgment rule applies and insulates the transaction from all attacks other than on the grounds of waste"), *aff'd*, *Corwin*, 125 A.3d 304.

[124] *See supra* note 32 and accompanying text.

[125] *See supra* Section II.A.

[126] *Singh v. Attenborough*, 137 A.3d 151, 151-52 (Del. 2016) ("When the business judgment rule standard of review is invoked because of a vote, dismissal is typically the result."); *see also Merge Healthcare*, 2017 WL 395981, at *13 (dismissing a suit under *Corwin* where "the [m]erger was approved by an uncoerced vote of a majority of the [c]ompany's disinterested stock, without the presence of a controller who extracted personal benefits" and waste was not alleged).

24

and abetting claim.[127]  Absent a viable breach of fiduciary duty claim, the aiding and abetting claim necessarily fails as well.[128]

## III.   CONCLUSION

The defendants' motion to dismiss is granted.  Count I fails to state a claim because the business judgment rule applies under *Corwin*.  Count II fails to state a claim because the predicate breach of fiduciary claim is dismissed.  The Complaint is dismissed with prejudice under Rule 12(b)(6).

---

[127] *In re Mindbody, Inc. S'holder Litig.*, -- A.3d. --, 2024 WL 4926910, at *31 (Del. Dec. 2, 2024) ("The basic four-part test for proving an aiding and abetting claim is well-settled under Delaware law and . . . requires '(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach.'" (quoting *Malpiede*, 780 A.2d at 1096)).

[128] *See Kihm v. Mott*, 2021 WL 3883875, at *24-25 (Del. Ch. Aug. 31, 2021) (dismissing an aiding and abetting claim where the underlying breach of fiduciary duty claim was dismissed under *Corwin*).